**Denise PENDARVIS, Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

**No. Civ.A. 97–1512 (PLF).**

United States District Court,
District of Columbia.

May 5, 1998.

---

1. A copy of this Order has been sent this date by facsimile to counsel of record.

Richard A. Salzman, Douglas B. Huron, Heller, Huron, Chertkof, Lerner & Salzman, Washington, DC, for Plaintiff.

Roxanne N. Sokolove, Akin, Grump, Strauss, Hauser & Feld, Washington, DC, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motions for (1) summary judgment on all counts, and (2) summary judgment on punitive damages. The Court has considered defendant's memoranda in support of its motions, plaintiff's opposition and her supplement thereto, defendant's reply, and the arguments of counsel in open court. The defendant's motions will be denied.

Count II of the complaint is brought under the District of Columbia Family and Medical Leave Act, D.C.Code § 36–1301, *et seq.*, and Count III is brought under the Federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* The parties agree that under both statutes, the plaintiff must prove (1) that she had a serious health condition, (2) that her condition rendered her unable to perform the functions of her job, and (3) that the plaintiff gave her employer reasonable notice of her need to take leave and the reasons for doing so. *See* 29 U.S.C. §§ 2611, 2612; D.C.Code §§ 36–1303, 36–1307.

Defendant argues, primarily on the basis of case law developed in non-pregnancy situations, that plaintiff is required to provide medical evidence to establish the first two elements: that she had a serious health condition and that she was unable to perform the functions of her job. Since plaintiff in this case has not provided evidence from a health care provider that she suffered from severe morning sickness or that her morning sickness rendered her unable to perform the functions of her job, defendant argues that it is entitled to judgment as a matter of law.[1] The Court disagrees.

■ The federal regulations specifically provide that in the case of severe morning sickness, no health care provider is required to prove that there is a "serious health condi-tion" entitling an employee to FMLA leave. *See* 29 C.F.R. § 825.114(a)(2)(ii) and (e). "Any period of incapacity due to pregnancy, or prenatal care" constitutes a "serious health condition" entitling an employee to FMLA leave, 29 C.F.R. § 825.114(a)(2)(ii), and certain absences attributable to incapacity—specifically including those by a pregnant employee unable to report for work because of severe morning sickness—qualify for FMLA leave "even though the employee ... does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days." 29 C.F.R. § 825.114(e).

■ Defendant's argument that medical evidence is necessary to establish that an employee is unable to perform the functions of her job has more substance, but the Court concludes that the statute and regulations, when read as a whole, do not require medical evidence in cases of pregnancy-related severe morning sickness. While one regulation provides that an employee is "unable to perform the functions of the position" where "a health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position," 29 C.F.R. § 825.115, that regulation cannot be considered in isolation. Throughout the FMLA regulations, pregnancy is recognized as a special case that is treated differently from other serious health conditions. *See, e.g.,* 29 C.F.R. § 825.114(a)(2)(ii) and (e). Absent an employer's request for medical certification under 29 C.F.R. § 825.305, *see infra* at 56–57, the regulations that specifically address pregnancy and pregnancy-related conditions cannot be reconciled with a requirement that a pregnant employee must always provide medical evidence that she was unable to work because of severe morning sickness. *See* 29 C.F.R. § 825.114(e) ("absences attributable to incapacity [due to pregnancy, or for prenatal care] qualify for FMLA leave *even though the employee ... does not receive treatment from a health care provider during the absence...: [For example, an] em-*

---

1. Plaintiff asserts that she consulted several doctors regarding her morning sickness. There is, however, no evidence in the record that any of these doctors diagnosed her morning sickness or advised her that she was unable to work because of her morning sickness.

*ployee who is pregnant may be unable to report to work because of severe morning sickness* ") (emphasis added). This distinction made between pregnancy-related illness and other medical conditions makes sense. Unlike most other medical conditions, as a practical matter morning sickness does not necessarily require treatment by a health care provider. Understandably, therefore, the regulations when read as a whole do not require such treatment as a predicate to qualify for leave because of a pregnant employee's inability to perform her job.

An employer is not without recourse if it believes that an employee is abusing the leave provisions of the FMLA. Under the FMLA, an employer has the right to ask for a medical certification of plaintiff's condition before granting or denying her leave. *See* 29 U.S.C. § 2613. The certification provision is "designed as a check against employee abuse of leave," and if an employer requests such certification, "the certification must state that the employee is unable to perform the functions of the employee's position." S.Rep. No. 103–3 at 25–26, *reprinted in* 1993 U.S.C.C.A.N. 3, 27–28. Medical certification, however, is an "option" for the employer, 29 C.F.R. § 825.115, not a requirement of the employee as a prerequisite either to receiving leave or to maintaining an action. *See* 29 C.F.R. § 825.305. In this case, it is undisputed that prior to terminating plaintiff, defendant never asked her to provide medical certification of her morning sickness or to provide a doctor's opinion that she was unable to perform her duties. Absent such a request, plaintiff was under no obligation to seek out medical treatment. While a finding by a health care provider that an employee is unable to perform the functions of her job would be helpful both to the employer in evaluating the situation and to a jury in determining liability, this Court concludes that it is not required under the FMLA or the regulations.[2]

To be sure, there are serious matters at issue between the parties, but they are issues of fact, uniquely susceptible to a jury's determination: Was plaintiff's health condition "serious"? Was her morning sickness "severe"? Was she "unable to perform the functions of [her] position" when she was absent from work? The jury will have to decide whether the testimony of plaintiff, her foster sister and other lay witnesses presented by plaintiff persuade them on these matters by a preponderance of the evidence. The jury also will have to consider whether plaintiff gave reasonable notice to her employer of the need for leave or the reasons for her absences, *see* 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.303(a); 4 D.C. Mun. Regs. § 1608, and whether those absences were excused or should have been—a factual matter requiring the jury to evaluate the relative credibility of plaintiff and her supervisor. *See Price v. City of Fort Wayne,* 117 F.3d 1022, 1026 (7th Cir.1997). There being genuine issues of material fact for resolution, defendant's motion for summary judgment on Counts II and III will be denied.

Count I is brought under the District of Columbia Human Rights Act and alleges that plaintiff was terminated because she was pregnant. Like Title VII of the Civil Rights Act of 1964, the D.C. Human Rights Act makes it unlawful to discharge an employee "wholly or partially for a discriminatory reason based upon the ... sex ... of [the] individual." D.C.Code § 1–2512. Discrimination on the basis of sex includes "discrimination on the basis of pregnancy, childbirth, or related medical conditions." D.C.Code § 1–2505. Under the D.C. Human Rights Act, plaintiff must first establish a *prima facie* case; defendant then has the burden of articulating a legitimate nondiscriminatory reason for its actions; and plaintiff has the ultimate burden of showing that the legiti-

---

2. Furthermore, in the absence of any medical evidence to contradict the lay evidence presented by plaintiff in opposition to summary judgment, this Court concludes that plaintiff may survive summary judgment and is entitled to go to the jury without medical evidence. *Cf. Langon v. Department of Health and Human Services,* 959 F.2d 1053, 1058–59 (D.C.Cir.1992); *Gudenkauf*

*v. Stauffer Communications, Inc.,* 922 F.Supp. 465, 474–75 (D.Kan.1996) (granting summary judgment where plaintiff claimed in an affidavit that she had severe morning sickness but medical evidence contradicted her testimony). Whether her case might be stronger with such evidence is beside the point.

mate nondiscriminatory reason was a pretext and that her employer had discriminatory intent. *See RAP, Inc. v. D.C. Commission on Human Rights,* 485 A.2d 173, 176 (D.C. 1984).

■ In order to establish a *prima facie* case of pregnancy discrimination, plaintiff must establish: (1) that she was pregnant; (2) that she was qualified for the position; (3) that she was affected by an adverse employment decision; and (4) that the adverse employment decision occurred under circumstances giving rise to an inference of discrimination, or that there is a causal nexus between her pregnancy and the adverse employment decision, or that a after her termination the position remained open or was filled by someone of comparable qualifications who was not pregnant. *See Boyd v. Harding Academy of Memphis, Inc.,* 88 F.3d 410, 413 (6th Cir.1996); *Milliner v. District of Columbia,* 932 F.Supp. 345, 350 (D.D.C. 1996); *Nilson v. Historic Inns Group, Ltd.,* 903 F.Supp. 905, 907 (D.Md.1995).

■ Drawing all reasonable inferences in favor of plaintiff as it must on a motion for summary judgment, *see e.g., Langon v. Department of Health and Human Services,* 959 F.2d at 1058, the Court finds that plaintiff has introduced enough evidence on the first three elements of the *prima facie* case to survive summary judgment. In addition, there is enough circumstantial evidence to establish a causal nexus between the pregnancy and her termination, based on the timing of plaintiff's termination as it relates to her announcements that she was pregnant and intended to have the baby and the fact that her immediate supervisor knew of her pregnancy and (according to plaintiff's evidence) exaggerated or inflated the number of her unexcused absences. *Cf. Mulhern v. Bureau of National Affairs, Inc.,* 41 Fair Empl.

Prac.Cas. 1759, 1986 WL 449 (D.D.C.1986). While defendant has put forth a legitimate non-discriminatory reason for plaintiff's termination—plaintiff's unexcused absences in violation of company policy and the terms of her probation—plaintiff has countered with sufficient circumstantial evidence that the reason given was pretextual, including the timing of the termination, the knowledge of her supervisor and the disparate treatment evidence she has proffered. Defendant is not entitled to summary judgment on Count I.[3]

■ Finally with respect to Count I only, there is the issue of punitive damages. Punitive damages are available under the D.C. Human Rights Act if plaintiff can make a "showing of evil motive or actual malice" on the part of her employer; "a mere finding of discriminatory action, without more, will not support an award of punitive damages." *Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 372 (D.C.1993). Plaintiff essentially alleges that her supervisor knew that she was pregnant, knew that her absences were excused and lied about his reasons for terminating her. While these allegations are vehemently denied by defendant, if proved they would be sufficient to establish evil motive on the part of the supervisor.

In order to obtain punitive damages, however, plaintiff also must establish that the defendant company ratified the conduct of the line supervisor. *See Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 10 (D.D.C. 1996). Plaintiff alleges that she told the supervisor's supervisor that she was pregnant before she was terminated and he replied that "it was not his problem," and that, after she was terminated, she told another company official that she was pregnant but he did nothing to investigate the matter. These allegations are sufficient on the issue of ratification to defeat summary judgment.

---

**3.** Admittedly, there is no obligation under Title VII for an employer to offer a pregnant employee special benefits. *See, eg.,Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir.1994). An employer therefore does not violate Title VII if it holds a pregnant employee to the same attendance standards to which it holds other employees. *Id.* Where, as here, however, plaintiff offers evidence (1) that her employer mischaracterized her attendance records so that it could use them to terminate her and (2) that non-pregnant employees with similar or worse attendance records have not been terminated, she can proceed with her Title VII action. *See Troy v. Bay State Computer Group, Inc.,* 141 F.3d 378 (1st Cir.1998) (Title VII jury verdict for employee upheld where jury could conclude that "stereotypes about pregnancy and not actual job attendance were the cause of the discharge").

For the foregoing reasons, it is hereby

ORDERED that defendant's motion for summary judgment on all counts is DENIED; and it is

FURTHER ORDERED that defendant's motion for summary judgment on punitive damages is DENIED.

SO ORDERED.