Amy GLEKLEN, Plaintiff,

v.

DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,
INC., et al., Defendants.

No. Civ.A. 98–0072 (JR).

United States District Court,
District of Columbia.

Feb. 22, 1999.

Roy W. Krieger, Paleos & Krieger, P.C., Washington, DC, for plaintiff.

Barry J. Reingold, Cynthia Hawkins, Perkins Coie, Washington, DC, for defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiff sues her former employer and several individuals under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), the District of Columbia Human Rights Act, D.C.Code § 1–2505(b), and the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, asserting that she was fired because she was pregnant. Defendants move for summary judgment. Because no reasonable juror could find that defendants' stated legitimate, non-discriminatory reason for firing plaintiff was a pretext, or that defendants fired her in order to deprive her of maternity leave, the motion must be granted.

### *Facts*

Plaintiff was hired as the Deputy Director of the Harriman Communications Center (HCC) in November 1993. The HCC is part of the Democratic Congressional Campaign Committee (DCCC), which exists to help elect and reelect Democrats to the U.S. House of Representatives. Plaintiff was a full-time employee

from November 1993 through the November 1994 elections. She took paid maternity leave from mid-November 1994 to mid-February 1995, after the birth of her second child. She then worked three days a week until May 1996, when she returned to a full-time schedule during the intensive period before the November 1996 elections. She resumed her three-day-a-week schedule after the elections and was a part-time employee when, in January 1997, she informed her supervisor, Dennis Hayden, that she was pregnant and that her baby was due in late July or early August.

On February 21, Hayden asked plaintiff to consider returning to work full-time. The DCCC had just launched "the most ambitious off-year program" in the DCCC's history (Def.Ex.7). Five new employees were hired to work on the Member Services Program, two of them specifically assigned to the HCC. On March 3, Hayden again asked plaintiff to return to work full-time. Plaintiff refused these requests, explaining that she had commitments to her children and to a graduate course at Johns Hopkins University. Hayden persisted, offering to cover for her on the one afternoon per week when she would have to leave early to attend her course, but plaintiff did not accept that offer. Instead, on March 5 and March 7, she discussed the situation with Hayden's supervisor, Matt Angle, the DCCC Executive Director. Angle told her that she would be terminated if she did not agree to work full-time and that a part-time "job share" arrangement was not an option. Plaintiff nevertheless continued to decline full-time employment. She was then given written notice of her termination, effective April 1, 1997. It is undisputed that plaintiff had no medical condition that prevented her from resuming a full-time work schedule.

Plaintiff was replaced on April 1 by Susan Maiers. Maiers was a full-time employee of DCCC who had previously worked in the fundraising office of DCCC. On April 1, she was also doing the work of HCC business manager. She continued to perform those business manager duties for some four months until a permanent business manager was hired in August 1997. The search for a replacement business manager began two weeks after Ms. Maiers took over plaintiff's job.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) in June 1997, alleging that DCCC's decision to require her to resume full-time work violated the Pregnancy Discrimination Act. On October 14, 1997, EEOC issued a "no reason to believe" letter, concluding, "The evidence shows that [plaintiff] [was] discharged because [she] refused to work full-time when Respondent changed [her] position from part-time to full-time duty." (Def.Ex. 20). It is undisputed that no DCCC employee nor any member of Congressman Frost's personal staff has ever been denied maternity or paternity leave.

### Analysis

To establish a *prima facie* case of discrimination under the Pregnancy Discrimination Act [1], a plaintiff must show that: (1) she was pregnant and/or subject to a pregnancy-related condition; (2) she was qualified for the position; (3) she was affected by an adverse employment action; and (4) the employment action "occurred under circumstances that give rise to an inference of discrimination." *Milliner v. District of Columbia*, 932 F.Supp. 345, 350 (D.D.C.1996) (citation omitted). It is undisputed that plaintiff was pregnant, qualified, and fired. The facts arguably (but only arguably, as discussed below) permit the inference that she was fired in April because her employer knew that she would be asking for maternity leave in August. This inference would successfully establish

**1.** The provisions of the D.C. Human Rights Act prohibiting discrimination on the basis of pregnancy are construed in a manner consistent with the federal statute. *Mulhern v. Bureau of National Affairs, Inc.*, No. CIV.A.86–761, 1986 WL 449, at *4 n. 2 (D.D.C. Sept.30, 1986).

a *prima facie* case of discrimination. Defendants, for their part, have adduced evidence that plaintiff was terminated because she refused to work on a full-time schedule when her full-time attention to the job was needed and when she was not disabled in any way by her pregnancy. That evidence satisfies the defendants' burden of producing a non-discriminatory reason for their action.

The recent *en banc* opinion of the Court of Appeals in *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C.Cir.1998), provides the framework for analyzing the record in this case.

> "Assuming ... that the employer has met its burden of producing a non-discriminatory reason for its actions, the focus of proceedings at trial (and at summary judgment) will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)." *Id.* at 1289.

The first *Aka* factor is plaintiff's *prima facie* case. Plaintiff's theory is that defendants insisted on plaintiff's working full-time knowing that she would refuse, so that they could fire her, so they could avoid granting her maternity leave several months later. But: defendants had accommodated the plaintiff in the past; they were launching an important new program; she was deputy director and was deemed an important player; and she refused full-time work in part because of her own agenda at Johns Hopkins, declining even her supervisor's offer to cover for her one afternoon per week. To infer that defendants were motivated in April by

their desire to avoid giving plaintiff her maternity leave in August requires an improbable leap of logic over all of those facts. If plaintiff has presented a *prima facie* case at all, it is an extremely weak one.

The second *Aka* factor is plaintiff's attack on defendants' stated rationale. Here, plaintiff's claim is even weaker. She asserts in support of her claim that defendant did not really need her services full-time and that her replacement, Ms. Maiers, did not work full-time at the job either. But there is no dispute that Ms. Maiers assumed the duties of deputy director on the day plaintiff was fired, or that Ms. Maiers was a full-time employee. The fact that Ms. Maiers was apparently able to handle the extra work of HCC business manager may prove that she was an efficient worker. It does not tend to prove that the defendants *intended* to replace plaintiff with another part-time worker. Indeed, there is *no* dispute that defendant promptly began searching for someone who would take over Ms. Maiers' previous job. Plaintiff has neither alleged nor shown that defendants dallied over the hiring of Ms. Maiers' replacement. No reasonable juror could infer from the facts of record that defendants' stated rationale was a sham.

As for further evidence of discrimination, the third *Aka* factor, plaintiff points to none. Defendants, on the other hand, are able to point to evidence of their "strong record in equal opportunity employment." It is undisputed that no DCCC employee, including plaintiff, has ever been denied maternity or paternity leave. When plaintiff took maternity leave in late 1994, defendants expressed no opposition. After plaintiff returned to work in February 1995, defendants did not punish her, but rather agreed to let her work three days a week so that she could spend more time with her family.

The Family and Medical Leave Act requires employers to allow employees up to twelve weeks of leave per year if the leave

is requested for one of the purposes set forth in the statute, including the birth of a child to the employee. 29 U.S.C. § 2612(a)(1)(D). Plaintiff's claim is that defendants interfered with her exercise of FMLA rights by terminating her in April 1997, thereby effectively denying her the FMLA leave request she would have made in August 1997. It is undisputed that no DCCC employee nor any employee of Congressman Frost's personal staff has ever been denied maternity or paternity leave. Plaintiff herself freely took maternity leave from DCCC in late 1994. The undisputed evidence shows that work schedules at DCCC are driven by workload, not the maternity or paternity status of its employees. There is no evidence from which a jury could reasonably find a causal link between defendants' April 1997 request that plaintiff resume a full-time schedule and the impending birth of her child in August 1997.

Summary judgment will be granted for the defendants.