Amy GLEKLEN, Appellant,

v.

DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,
INC., et al., Appellees.

No. 99–7041.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 22, 1999.

Decided Jan. 11, 2000.

Roy W. Krieger argued the cause and filed the briefs for appellant.

Barry J. Reingold argued the cause for appellees. With him on the brief was Kara M. Sacilotto.

Before: WILLIAMS, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

This is an appeal from an order of the district court, Robertson, J., granting summary judgment for the Democratic Congressional Campaign Committee on three counts of unlawful discrimination alleged by Amy Gleklen, a former employee. We affirm because Gleklen did not rebut the Committee's reasonable, nondiscriminatory explanation for its employment decision.

I

Gleklen worked as the Deputy Director of the Harriman Communications Center, an arm of the Democratic Congressional Campaign Committee, shifting between full-time and part-time status as the needs of the Democratic Committee changed between campaign seasons. In February 1997, shortly after Gleklen informed the Committee that she was pregnant with her third child, the Committee decided to embark on a more vigorous off-cycle member services program which required it to hire additional staff and increase the work hours of the existing staff. In early March 1997, the Democratic Committee requested Gleklen to resume fulltime employment in April. Gleklen refused. She preferred to continue working three days a week and wanted the Committee to reinstitute the

job-sharing arrangement it had allowed the previous year in the event that more work was needed. When Gleklen failed to report for work on April 1, she was fired and immediately replaced by a woman who was not pregnant. In June 1997, Gleklen timely filed a complaint with the EEOC alleging that the Committee had violated the Pregnancy Discrimination Act, the D.C. Human Rights Act, and the Family and Medical Leave Act. The EEOC responded with a "no reason to believe" letter on October 14, 1997, and Gleklen brought suit in federal district court.

Applying the burden-shifting analysis for discrimination claims set forth in *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C.Cir.1998) (en banc), the district court granted the Democratic Committee's motion for summary judgment because there was "no evidence from which a jury could reasonably find a causal link between defendants' April 1997 request that plaintiff resume a full-time schedule and the impending birth of her child in August 1997." *Gleklen v. Democratic Congressional Campaign Comm.*, 38 F.Supp.2d 18, 21 (D.D.C.1999).

## II

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex...." 42 U.S.C. § 2000e–2(a). Congress passed the Pregnancy Discrimination Act as an amendment to Title VII: "[W]omen affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work...." 42 U.S.C. § 2000e(k). The D.C. Human Rights Act uses the same language. *See* D.C.Code Ann. § 1–2505(b) (1981). The Family and Medical Leave Act grants eligible employees twelve weeks of leave during any twelve-month period following the birth of a child, and further provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Gleklen claims that the Democratic Committee violated each of these provisions.

■ The burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applicable to D.C. Human Rights Act claims. *See, e.g., Carpenter v. Federal Nat'l Mortgage Ass'n*, 165 F.3d 69, 72 (D.C.Cir.1999). Although we have not considered the applicability of *McDonnell Douglas* to claims like Gleklen's under the Pregnancy Discrimination Act and the Leave Act, other circuits have concluded that *McDonnell Douglas* provides the proper framework for analysis of such claims. *See, e.g., Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir.1999) (Leave Act); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 & n. 10 (5th Cir.1999) (Leave Act); *Maldonado v. U.S. Bank*, 186 F.3d 759, 763 (7th Cir.1999) (Pregnancy Discrimination Act); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400–01 (2d Cir.1998) (Pregnancy Discrimination Act). Given that the Pregnancy Discrimination Act and D.C. Human Rights Act provisions in question are identical, and in view of the general similarity of the Leave Act, the *McDonnell Douglas* approach offers a coherent method of evaluating the evidence for all three alleged violations. For the most part, then, Gleklen's claims may be analyzed simultaneously.

■ Under *McDonnell Douglas*, Gleklen had to establish a prima facie case of discrimination, at which point the Democratic Committee had to produce evidence articulating a legitimate, nondiscriminatory reason for its actions, after which Gleklen had to "produce substantial probative evidence that the proffered reason was not the true reason for the employment deci-

sion and that the real reason was [discriminatory animus]." *Chaffin*, 179 F.3d at 320; *see also Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 815 (D.C.Cir. 1981).

### A

█ On her Pregnancy Discrimination Act and D.C. Human Rights Act claims, Gleklen made out the requisite prima facie case: she was pregnant, she was qualified, she was fired, she was replaced by a woman who was not pregnant, and her replacement performed Gleklen's former job while devoting at least some of her time to other responsibilities.[1] *See Pendarvis v. Xerox Corp.*, 3 F.Supp.2d 53, 57 (D.D.C.1998).[2]

█ On her claim under the Leave Act, Gleklen had to show that she engaged in a protected activity under this statute; that she was adversely affected by an employment decision; and that the protected activity and the adverse employment action were causally connected. *See Chaffin*, 179 F.3d at 319. As she describes her claim, it is essentially one of retaliation.[3] Temporal proximity is often found sufficient to establish the requisite causal connection for such claims. *See, e.g., King v. Preferred Technical Group*, 166 F.3d 887, 893 (7th Cir.1999). In this case, Gleklen's supervisor requested that she return to work full time only a few weeks after she disclosed her pregnancy. These two events were sufficiently close in time to infer a causal nexus on the facts of this case. *Compare Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177–78 (3d Cir.1997); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42–43 (5th Cir.1992). Accordingly, Gleklen appears to have met her burden of alleging facts from which a reasonable jury might infer a causal connection.

### B

█ Although Gleklen made out a prima facie case on each of her claims, she cannot prevail on any of them. The Democratic Committee put forward reasonable and nondiscriminatory reasons for requiring Gleklen to work full time if she wanted to keep her job: they were planning to launch a major new off-cycle initiative which required the full-time efforts of existing employees as well as the hiring of new ones. Gleklen believes this was an elaborate pretext designed to force her resignation, but she fell far short of rebutting the Committee's more plausible explanation for its actions. *See Aka*, 156 F.3d at 1289. She relies on four items of "evidence," all of which lack substance or otherwise fail to establish a "genuine issue as to any material fact." FED. R. CIV. P. 56(c).

---

1. Gleklen set forth additional allegations, unnecessary to mention.

2. The Democratic Committee also argued that the Pregnancy Discrimination Act does not require employers to grant maternity leave; that maternity leave must be given only if the employer overlooks comparable absences of non-pregnant employees; that the Committee did not offer eight weeks of leave on either a paid or unpaid basis to employees who were not pregnant; and that Gleklen therefore would not have a claim under the Act even if the Committee terminated her precisely to avoid providing her maternity leave. *See* Brief for Appellees at 26–30 (citing 29 C.F.R. § 1604.10(b); *Marshall v. American Hosp. Ass'n*, 157 F.3d 520, 527 (7th Cir.1998); *Rhett v. Carnegie Ctr. Assocs.*, 129 F.3d 290, 296 (3d Cir.1997); *Troupe v. May Dep't Stores*, 20 F.3d 734, 738 (7th Cir.1994); *Pendarvis*, 3 F.Supp.2d at 57 n. 3). The Committee also argued that *Abraham v. Graphic Arts Int'l Union*, 660 F.2d at 817, cited by Gleklen, does not support her position that the Pregnancy Discrimination Act gives her rights superior to those enjoyed by non-pregnant employees because *Abraham* employed "disparate impact" analysis, whereas Gleklen claims disparate treatment. Given our disposition of the case, it is not necessary for us to consider the questions these arguments pose.

3. "She planned to engage in statutorily protected activity (*i.e.* maternity leave); her employer took adverse action (she was fired); and there is evidence of a causal connection between these two events." Brief for Plaintiff–Appellant at 24.

First, in her deposition, Gleklen testified that someone had informed her of a conversation in which Congressman Frost said to former Congresswoman Margolies–Mezvinsky that Gleklen was terminated because Gleklen, before her last pregnancy, had told the Democratic Committee that she was not going to have any more children. Gleklen's deposition is the only evidence of this conversation in the record, and it is not enough.

 The rather awkward language of Rule 56(e) of the Federal Rules of Civil Procedure provides that "an adverse party may not rest on mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." While a nonmovant is not required to produce evidence in a *form* that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence. The opening lines of the rule suggest as much: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Otherwise, the objective of summary judgment—to prevent unnecessary trials—would be undermined. *See id.* at 323–24 & n. 5, 106 S.Ct. 2548. Verdicts cannot rest on inadmissible evidence. Gleklen's evidence about the conversation is sheer hearsay; she would not be permitted to testify about the conversation at trial. *See* FED. R. EVID. 801–807. It therefore counts for nothing. *See* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2722, at 371–72 & n.11 (1998) (citing cases).

Second, in her affidavit opposing summary judgment and in her deposition, Gleklen recounted a conversation in which Greg Speed—who was hired full time along with Todd Glass in March 1997 to handle the increased workload of the Democratic Committee's new initiative—said that he did not expect a significant increase in the Harriman Communications Center's workload until August 1997. Even if true, Gleklen never suggested that Speed was in any manner involved in the decision to terminate her; nor did she offer any evidence that Speed shared his views with the supervisors who made that decision. Moreover, the record contains several documents detailing the Democratic Committee's new initiative. (The documents are under seal.) Even if use of the Harriman Center's facilities did not rise appreciably before August 1997, clearly the efforts to generate increased work began well before Gleklen was terminated, directly supporting the Democratic Committee's contention that it anticipated an increased workload for the Harriman Center's staff.

Third, Gleklen's affidavit purports to refute the Democratic Committee's statistics demonstrating increased activity at the Harriman Center between April and August 1997. Whether the activity level actually increased is not the critical question. Gleklen needed to—but did not—refute the Democratic Committee's evidence showing that those in charge of the Harriman Center reasonably believed that its activity would increase when they asked Gleklen to resume a full-time schedule and later terminated her for rejecting that request.

Fourth, Gleklen is mistaken in asserting that Susan Maiers, the woman who replaced her, only worked part time to fill the Deputy Director's duties. The evidence shows that Maiers was working full time for the Democratic Committee Finance Office one month before Gleklen's termination and that Maiers was performing the duties of the Harriman Center's business manager on a part-time basis until a replacement could be found. When Gleklen was terminated, Maiers left the Democratic Committee Finance Office and

took over Gleklen's post as Deputy Director full time, working nine-to-five, five days a week. Maiers testified that she acted as the Deputy Director on a full-time basis, and performed the business manager functions part time—the opposite of Gleklen's assertion. This testimony further supports the Democratic Committee's contention that the Deputy Director's position required a full-time employee. In any event, Gleklen did not rebut the Committee's evidence that it was making a good faith attempt at filling the business manager position while Maiers did double duty.

The district court's summary judgment in favor of the Democratic Congressional Campaign Committee is therefore affirmed.