T.C. Memo. 2018-133

UNITED STATES TAX COURT

WILLIAM MARK SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1224-17W.                    Filed August 22, 2018.

William Mark Scott, pro se.

<u>Philip Edward Blondin</u>, <u>Patricia P. Davis</u>, and <u>Kevin G. Gillin</u>, for

respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>: This case is before the Court on respondent's motion for

summary judgment filed April 11, 2018, pursuant to Rule 121.[1]  Petitioner filed his

response in opposition to motion for summary judgment on May 7, 2018.  For the

_____

[1]Unless otherwise noted, all Rule references are to the Tax Court Rules of
Practice and Procedure, and all section references are to the Internal Revenue
Code of 1986, as amended.

[*2] reasons discussed infra, we conclude that there is no dispute as to a material fact and thus this case is ripe for summary adjudication.

Background

Petitioner is the former Director of the Internal Revenue Service (IRS) Office of Tax Exempt Bonds (Tax Exempt Bonds). He worked for more than 19 years at the IRS and the IRS Office of Chief Counsel; he has more than 30 years' experience in the area of tax-exempt municipal bonds.

On February 18, 2014, the IRS Whistleblower Office (Whistleblower Office) received a Form 211, Application for Award for Original Information, with an attached narrative and exhibits, from petitioner. The Form 211 alleges that certain tax-exempt bonds issued by a U.S. city's industrial development agency (Agency) did not qualify for tax exempt treatment. The Form 211 alleged that the bonds violated the general arbitrage yield restriction rules of section 1.148-2, Income Tax Regs., and thus concluded that the bonds were "taxable private activity bonds". The Form 211 noted that a prior examination of the bonds was closed without any adjustments.

Petitioner's claim was assigned claim No. 2014-006300, and the Whistleblower Office sent petitioner a letter acknowledging receipt of his Form 211 on or about April 22, 2014. On May 16, 2014, petitioner's Form 211 was

[*3] forwarded for review to a subject matter expert in the IRS Tax Exempt and Government Entities Division (TE/GE).  On May 27, 2014, the Form 211 was further forwarded to a tax-exempt bond subject matter expert, Randy Torres, for additional review and recommendation.

On August 21, 2014, Mr. Torres sent a Form 11369, Confidential Evaluation Report on Claim for Reward, to the Whistleblower Office.  The Form 11369 stated that the bond issuance

> is not recommended for another examination since the 2012 examination addressed and tested arbitrage issues and did not identify an arbitrage issue.  The Whistleblower assumes the bond yield calculation was miscalculated because the Net Benefit test did not include the SIDA fee as an investment fee.  The WB did not provide any schedules, documents or a bond yield calculation to show bond yield was computed incorrectly.[2]

Upon receipt of the Form 11369, on October 29, 2014, Whistleblower Office Analyst Steven Mitzel prepared an award recommendation memorandum which recommended denial of petitioner's claim based on the tax-exempt bond subject matter expert's decision not to pursue petitioner's claim.  Subsequently, Analyst Mitzel sent petitioner a preliminary denial letter on December 8, 2014.  On February 10, 2015, petitioner responded to Analyst Mitzel's letter.  The

[2]Petitioner objects to the admission of the above quoted portion of the Form 11369 on the grounds of hearsay.  We admit it as a record kept in the course of a regularly conducted activity of an organization.  See Fed. R. Evid. 803(6).

[*4] response encouraged respondent to reconsider the proposed denial and to proceed with an examination of the bonds based on petitioner's information.

Upon receipt of petitioner's response, Analyst Mitzel forwarded the response to TE/GE for additional consideration. On May 1, 2015, TE/GE requested that the Whistleblower Office return petitioner's claim to it to allow a different person to review the merits of the claim. On February 16, 2016, the reviewing tax-exempt bonds subject matter expert, James Held, sent a new Form 11369 to the Whistleblower Office, recommending the IRS not open a new examination of the bond issuance for the following reasons.

1. A full-scope examination had previously been conducted revealing no issues associated with the bond issue.

2. The arbitrage report provided in the prior examination indicated a negative rebate liability.

3. No indications of fraud, abusive transactions, or other tax law violations were found.

4. Petitioner, under penalties of perjury, stated in his claim "My review has not identified any fraudulent activities" and "My review has not uncovered any specific allegation of a tax law violation. Instead, I am challenging the tax law conclusion reached by the law firm in this matter, whose opinion has been and continues to be relied upon by everyone involved in the transaction, including holders of the bonds, the issuer and the Obligor".

5. No credible evidence was provided by petitioner indicating that a violation of the tax laws occurred. "Instead, he merely has a

**[*5]**  difference of opinion that does not constitute credible evidence and does not warrant the reopening of the bond issuance."

Whistleblower Office Analyst Joel Calandreli reviewed this Form 11369 on September 22, 2016.  On October 6, 2016, petitioner sent the Whistleblower Office a letter containing additional information, which was forwarded to the tax-exempt bonds subject matter expert.  On October 12, 2016, the Whistleblower Office received an email response from the tax-exempt bonds subject matter expert, wherein the expert stated that the additional information did not change his conclusion not to reopen the examination of the Agency.

On December 12, 2016, the Whistleblower Office prepared an updated award recommendation memorandum and on December 13, 2016, the Whistleblower Office issued petitioner a final denial.  Efficient in its use of details specific to petitioner's claim, the final denial states:

> The claim has been recommended for denial because the IRS took no action based on the information that you provided.  Common reasons for declining to act on information include statute of limitations issues, limited resources, or a conclusion that there are no material issues.

## Discussion

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials."  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).

**[\*6]** Either party may move for summary judgment upon all or any part of the legal issues in controversy, but we may grant summary judgment only if there is no genuine dispute as to any material fact. Rule 121(a) and (b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that there is no genuine dispute of material fact, and the Court views all factual materials and inferences in the light most favorable to the nonmoving party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial."

A whistleblower award under section 7623(b) generally depends on two prerequisites: (1) the Commissioner's commencing an administrative or judicial action and (2) the collection of proceeds. Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014); Cooper v. Commissioner, 136 T.C. 597, 600 (2011). We have held that we may not order the Commissioner to commence an administrative or judicial action. See Cohen v. Commissioner, 139 T.C. at 302; Cooper v. Commissioner, 136 T.C. at 600-601.

**[\*7]** In his motion for summary judgment, and supported by the declaration of Analyst Calandreli, respondent detailed all of the actions taken by the Whistleblower Office and the Tax Exempt Bonds agents. Respondent stated that the IRS reviewed petitioner's submission and supplemental submission but took no action and collected no proceeds.

Petitioner contends that respondent, in fact, commenced an administrative action and collected proceeds related to the bond issuances. In the declaration attached to his response in opposition to respondent's motion for summary judgment, petitioner states that he "obtained specific information and records regarding two separate attempts by TEB [Tax Exempt Bonds] to disguise the collection of proceeds on examinations initiated through submissions of Forms 211. The information and records collected relate specifically to Whistleblower Office Claim No. 2015-005991 and Claim No. 2015-006729." Petitioner asserts that the IRS issued no-change letters to the governmental issuer of the bonds, but the Tax Exempt Bonds division subsequently took administrative actions "so as to collect millions in tax dollars from the beneficial owners of the bonds." Petitioner further asserts that in connection with these two claim numbers: "I have been informed that TEB had failed to report these administrative actions and collections on the Forms 11369 sent to the IRS Whistleblower Office". Continuing, he states:

[*8] "I have been informed that the IRS Whistleblower Office had been working on denial letters based upon TEB's erroneous Forms 11369 prior to receiving the results of my independent research." Petitioner further states: "I have been told that the treatment of whistleblowers by TEB has been subject to active consideration of a possible review by the Treasury Inspector General for Tax Administration."

In his response in opposition to respondent's motion for summary judgment, petitioner posits: "[b]ased on recent history, TEB would not have reported administrative actions against the beneficial owners of the bonds on the Forms 11369." Petitioner asserts that the administrative file does not preclude the possibility of administrative actions against the beneficial owners of the bonds or other possible collections. Consequently, petitioner argues:

> Given that respondent failed to complete the administrative file, and petitioner is legally unable to force the third-party conduit borrower to execute an affidavit or declaration, or to produce records prior to the date set for trial, respondent's request for summary judgment is premature. W.L Gore & Assoc. v. Commissioner, T.C. Memo. 1995-96; Rule 121(e).

> Respondent's motion for summary judgment should be denied as reasonable doubts as to material facts exist that are not included within the administrative file, including whether TEB took actions to collect directly from the actual taxpayers and whether the related action has been completed and resulted in a collection.

**[*9]** Petitioner's statements are not compelling. First, we note that petitioner has no personal knowledge of the IRS actions upon which he reports. He states that he has been informed of the IRS' alleged malfeasance in other situations and presents what he has been told as true in this situation. Rule 121(d) provides that "[s]upporting and opposing affidavits or declarations shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." Our Rule 121 is modeled in large part after rule 56 of the Federal Rules of Civil Procedure. Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Consequently, "'sheer hearsay' * * * 'counts for nothing'" on summary judgment. Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

This is not the end of our analysis. Even though petitioner's evidence would not be admissible at trial, summary judgment evidence need not be in a form that would be admissible at trial, so long as it is capable of being converted into admissible evidence. Gleklen, 199 F.3d at 1369. But beyond the hearsay issue, petitioner's statements also suffer from relevancy problems. Even if petitioner can establish that there was malfeasance in the other cases, i.e., Claim

[*10] No. 2015-005991 and Claim No. 2015-006729, petitioner has presented no evidence, admissible or otherwise, that such occurrences in fact occurred in his case. Petitioner's argument is missing a vital step; petitioner asserts malfeasance in another case, then a gap of uncertainty, then his conclusion that malfeasance exists in this case.

Petitioner appeals to Rule 121(e), citing the difficulty in acquiring factual information in this case. Rule 121(e) provides the rule for instances when affidavits or declarations are unavailable:

> If it appears from the affidavits or declarations of a party opposing the motion that such party cannot for reasons stated present by affidavit or declaration facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits or declarations to be obtained or other steps to be taken or may make such other order as is just. If it appears from the affidavits or declarations of a party opposing the motion that such party's only legally available method of contravening the facts set forth in the supporting affidavits or declarations of the moving party is through cross-examination of such affiants or declarants or the testimony of third parties from whom affidavits or declarations cannot be secured, then such a showing may be deemed sufficient to establish that the facts set forth in such supporting affidavits or declarations are genuinely disputed.

In his response to respondent's motion for summary judgment, petitioner asserts that the administrative file is incomplete but that he has no means to acquire

**[\*11]** further documents and he is unable to force the Agency to execute an affidavit or declaration or produce records.

In Whistleblower 14106-10W v. Commissioner, 137 T.C. 183, 188-189 (2011), we stated:

> Rule 121(e) is modeled in large part after former rule 56(f) of the Federal Rules of Civil Procedure (redesignated rule 56(d) in 2009 with nonsubstantive changes). In Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386 (Fed. Cir. 1989), applying former rule 56(f), the court held that the plaintiff could not avoid summary judgment by requesting discovery. The court characterized the plaintiff's opposition as saying, in effect: "we have no factual basis for opposing summary judgment, but, if you stay proceedings, we might find something." Id. at 1389. The court observed: "If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files." Id. * * *

To conclude, we hold that there is no genuine issue as to any material fact and we may render a decision as a matter of law. As previously noted, the IRS examined the bonds issued by the Agency and the examination was closed without any adjustments. Respondent, via sworn affidavit, states that no proceeds were collected and petitioner presented no evidence that any such proceeds were collected in this matter. Consequently, we shall grant respondent's motion for summary judgment, filed April 11, 2018.

**[*12]** In the light of the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.