T.C. Memo. 2018-134

UNITED STATES TAX COURT

WILLIAM MARK SCOTT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7809-17W.                    Filed August 22, 2018.

William Mark Scott, pro se.

<u>Philip Edward Blondin</u> and <u>Kevin G. Gillin</u>, for respondent.

MEMORANDUM OPINION

JACOBS, <u>Judge</u>:  This case is before the Court on respondent's motion for

summary judgment filed April 16, 2018, pursuant to Rule 121.[1]  Petitioner filed his

response in opposition to motion for summary judgment on May 7, 2018.  For the

---

[1]Unless otherwise noted, all Rule references are to the Tax Court Rules of
Practice and Procedure, and all section references are to the Internal Revenue
Code of 1986, as amended.

[*2] reasons discussed infra, we conclude that there is no dispute as to a material fact and thus this case is ripe for summary adjudication.

## Background

Petitioner is the former Director of the Internal Revenue Service (IRS) Office of Tax Exempt Bonds (Tax Exempt Bonds). He worked for more than 19 years at the IRS and the IRS Office of Chief Counsel; he has more than 30 years' experience in the area of tax-exempt municipal bonds. On October 23, 2013, the IRS Whistleblower Office (Whistleblower Office) received a Form 211, Application for Award for Original Information, with an attached narrative and exhibits, from petitioner. The Form 211 alleges that certain tax-exempt bonds issued by a U.S. city for purposes of furthering the construction of a hazardous waste disposal facility did not qualify for tax-exempt treatment, in that the facility financed by the bonds did not meet the "qualified hazardous waste facilities" requirement of section 142(a)(10) or the "solid waste disposal facilities" requirement of section 142(a)(6).[2] Consequently, petitioner asserts that (1) the bonds should be reclassified as "taxable private activity bonds" and the interest

---

[2]Sec. 142 governs exempt facility bonds. Sec. 142(a)(6) provides: "For purposes of this part, the term 'exempt facility bond' means any bond issued as part of an issue 95 percent or more of the net proceeds of which are to be used to provide * * * solid waste disposal facilities". Sec. 142(a)(10) applies this rule to "qualified hazardous waste facilities".

**[*3]** received with respect to the bonds is not excludible under section 103[3] and (2) no deduction is allowable on the financing of the bonds which accrues during the period beginning on the date the facility is not used for tax-exempt purposes and ending on the date such facility is so used under section 150(b)(4).[4]

Petitioner's claims were assigned two claim numbers: (1) the question as to the tax-exempt status of the bonds was assigned claim No. 2014-000380 and (2) the question as to the interest expense deductibility was assigned claim No. 2014-000381. On November 18, 2013, petitioner's Form 211 was forwarded for review to a subject matter expert in the IRS Tax Exempt and Government Entities Division. On November 25, 2013, the Form 211 was further forwarded to a tax-exempt bond subject matter expert for additional review and recommendation.

---

[3]Sec. 103(a) provides that "[e]xcept as provided in subsection (b), gross income does not include interest on any State or local bond." Sec. 103(b) provides that subsec. (a) does not apply to (1) private activity bonds which are not qualified bonds (within the meaning of sec. 141), (2) arbitrage bonds (defined in sec. 148), and (3) bonds which are not in registered form (as governed by sec. 149). The IRS is empowered to collect proceeds from taxpayers, including the beneficial owner of the above-mentioned bonds, should it be determined that the bond issuances do not qualify as tax exempt.

[4]Sec. 150(b)(4) denies a deduction for interest expense paid in the case of any facility with respect to which financing is provided from the proceeds of any private activity bond which, when issued, purported to be a tax-exempt facility bond described in sec. 142(a), with certain exceptions, if such facility is not used for a purpose for which a tax-exempt bond could be issued.

[*4] Subsequently, the Form 211 was forwarded to the field for examination with respect to the tax-exempt bond issue identified by petitioner.

On September 23, 2016, the Whistleblower Office received a Form 11369, Confidential Evaluation Report on Claim for Reward, dated August 22, 2016, with respect to the tax-exempt status of the bonds (claim No. 2014-000380).  The Form 11369 stated that the IRS opened an examination of the bond issuances and that the examination focused on whether the facility financed by the tax-exempt bonds qualified as a solid waste facility under section 142.  Continuing, the Form 11369 stated:

> During the course of the examination, it was initially determined that a potential issue existed as to whether the facility met the requirements of section 142(a) of the Code.  An initial adverse proposal was issued to the issuer and subsequently rebutted with several cites [i.e., legal citations] that backed their position. * * * Accordingly, it was decided by management to close the case as a No Change.  The tax-exempt status of the bonds was preserved.
>
> No Change letters were issued to the Issuer on 8/22/16 and the examination was closed.[5]

Following an initial review of the August 22, 2016, Form 11369, the Whistleblower Office Analyst assigned to the case, Joel Calandreli, requested

---

[5]Petitioner objects to the admission of the above-quoted portion of the Form 11369 on the grounds of hearsay.  We admit it as a record kept in the course of a regularly conducted activity of an organization.  See Fed. R. Evid. 803(6).

[*5] additional information from the Tax Exempt Bonds' agents with respect to claim No. 2014-000381 regarding the deductibility of interest expense pursuant to section 150(b). On or before September 26, 2016, the Whistleblower Office received a second Form 11369, stating:

> The claim was associated with claim 2014-000380 and was dependent on the outcome of the examination of that claim. The examination of claim 2014-000380 resulted in a No Change to the status of the bond issues in question, which negates the violation in claim 2014-000381. Therefore, no examination of * * * [name of the bond issuer] is warranted.[6]

On October 12, 2016, Analyst Calandreli reviewed the two Forms 11369 and prepared an award recommendation memorandum with respect to claim No. 2014-000381, stating that petitioner was not entitled to an award because the bonds in question could retain their tax-exempt status.

Analyst Calandreli also began preparing an award recommendation memorandum with respect to claim No. 2014-000380. However, he determined that certain requested information from the IRS Office of Chief Counsel was missing.

---

[6]Petitioner also objects to the admission of this quoted portion of the Form 11369. We admit it as a record kept in the course of a regularly conducted activity of an organization. See Federal Rule of Evidence 803(6).

**[*6]** On or about November 1, 2016, Analyst Calandreli received the information he had requested. He then reconfirmed, via the IRS Integrated Data Retrieval System database, that the examination with respect to claim No. 2014-000380 resulted in no changes or adjustments to any party's tax liability, and he completed the award recommendation memorandum. The memorandum stated that while petitioner's information was used as a part of an examination, the examination ultimately was closed without change following receipt of advice from the IRS Office of Chief Counsel that the facility financed by the bonds qualified as a solid waste disposal facility.

On or about November 1, 2016, the Whistleblower Office issued a preliminary denial letter with respect to claim Nos. 2014-000380 and 2014-000381. Petitioner did not submit any comments, and on March 1, 2017, the Whistleblower Office issued petitioner a final denial for claim Nos. 2014-000380 and 2014-000381. The final denial states:

> The claim (2014-000380) has been recommended for denial because the information you provided was reviewed as part of an examination, but the examination resulted in no change.

> The claim (2014-000381) has been recommended for denial because the IRS took no action based on the information you provided. Common reasons for declining to act on information include statute of limitations issues, limited resources, or a conclusion that there are no material issues.

**[\*7]**                                            <u>Discussion</u>

Summary judgment serves to "expedite litigation and avoid unnecessary and expensive trials." <u>Fla. Peach Corp. v. Commissioner</u>, 90 T.C. 678, 681 (1988). Either party may move for summary judgment upon all or any part of the legal issues in controversy, but we may grant summary judgment only if there is no genuine dispute as to any material fact. Rule 121(a) and (b); <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985). The moving party bears the burden of showing that there is no genuine dispute of material fact, and the Court views all factual materials and inferences in the light most favorable to the nonmoving party. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985). Rule 121(d) provides that where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but rather must set forth specific facts, by affidavits or otherwise, "showing that there is a genuine dispute for trial."

A whistleblower award under section 7623(b) generally depends on two prerequisites: (1) the Commissioner's commencing an administrative or judicial action and (2) the collection of proceeds. <u>Cohen v. Commissioner</u>, 139 T.C. 299, 302 (2012), <u>aff'd</u>, 550 F. App'x 10 (D.C. Cir. 2014); <u>Cooper v. Commissioner</u>, 136 T.C. 597, 600 (2011). We have held that we may not order the Commissioner

**[*8]** to commence an administrative or judicial action. See Cohen v.

Commissioner, 139 T.C. at 302; Cooper v. Commissioner, 136 T.C. at 600-601.

In his motion for summary judgment, and supported by the declaration of Analyst Calandreli, respondent detailed all of the actions taken by the Whistleblower Office and the Tax Exempt Bonds agents. Respondent stated that the IRS examined the bond issuances reported by petitioner but took no action and collected no proceeds.

Petitioner contends that respondent, in fact, commenced an administrative action and collected proceeds related to the bond issuances. In the declaration attached to his response in opposition to respondent's motion for summary judgment, petitioner states that he "obtained specific information and records regarding two separate attempts by TEB [Tax Exempt Bonds] to disguise the collection of proceeds on examinations initiated through submissions of Forms 211. The information and records collected relate specifically to Whistleblower Office Claim No. 2015-005991 and Claim No. 2015-006729." Petitioner asserts that the IRS issued no-change letters to the governmental issuer of the bonds, but the Tax Exempt Bonds division subsequently took administrative actions "so as to collect millions in tax dollars from the beneficial owners of the bonds." Petitioner further asserts that in connection with these two claim numbers: "I have been

**[*9]** informed that TEB had failed to report these administrative actions and collections on the Forms 11369 sent to the IRS Whistleblower Office". Continuing, he states: "I have been informed that the IRS Whistleblower Office had been working on denial letters based upon TEB's erroneous Forms 11369 prior to receiving the results of my independent research." Petitioner further states: "I have been told that the treatment of whistleblowers by TEB has been subject to active consideration of a possible review by the Treasury Inspector General for Tax Administration."

In his response in opposition to respondent's motion for summary judgment, petitioner posits: "[b]ased on recent history, TEB would not have reported administrative actions against the beneficial owners of the bonds on the Forms 11369 relied upon by the IRS Whistleblower Office to prepare the denial letters in this instance." Petitioner asserts that the administrative file does not preclude the possibility of administrative actions against the beneficial owners of the bonds or other possible collections. Consequently, petitioner argues:

> Given that respondent failed to complete the administrative file, and petitioner is legally unable to force either the governmental issuer or the conduit borrower to execute an affidavit or declaration, or to produce records prior to the date set for trial, respondent's request for summary judgment is premature. W.L Gore & Assoc. v. Commissioner, T.C. Memo. 1995-96; Rule 121(e).

**[*10]** Respondent's motion for summary judgment should be denied as reasonable doubts as to material facts exist that are not included within the administrative file, including whether TEB took actions to collect directly from the beneficial owners of the bonds or other actual taxpayers.

Petitioner's statements are not compelling. First, we note that petitioner has no personal knowledge of the IRS actions upon which he reports. He states that he has been informed of the IRS' alleged malfeasance in other situations and presents what he has been told as true in this situation. Rule 121(d) provides that "[s]upporting and opposing affidavits or declarations shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant or declarant is competent to testify to the matters stated therein." Our Rule 121 is modeled in large part after rule 56 of the Federal Rules of Civil Procedure. Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Consequently, "'sheer hearsay' * * * 'counts for nothing'" on summary judgment. Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000)).

This is not the end of our analysis. Even though petitioner's evidence would not be admissible at trial, summary judgment evidence need not be in a form that would be admissible at trial, so long as it is capable of being converted

**[*11]** into admissible evidence. <u>Gleklen</u>, 199 F.3d at 1369. But beyond the hearsay issue, petitioner's statements also suffer from relevancy problems. Even if petitioner can establish that there was malfeasance in the other cases, i.e., Claim No. 2015-005991 and Claim No. 2015-006729, petitioner has presented no evidence, admissible or otherwise, that such occurrences in fact occurred in his case. Petitioner's argument is missing a vital step; petitioner asserts malfeasance in another case, then a gap of uncertainty, then his conclusion that malfeasance exists in this case.

Petitioner appeals to Rule 121(e), citing the difficulty in acquiring factual information in this case. Rule 121(e) provides the rule for instances when affidavits or declarations are unavailable:

> If it appears from the affidavits or declarations of a party opposing the motion that such party cannot for reasons stated present by affidavit or declaration facts essential to justify such party's opposition, then the Court may deny the motion or may order a continuance to permit affidavits or declarations to be obtained or other steps to be taken or may make such other order as is just. If it appears from the affidavits or declarations of a party opposing the motion that such party's only legally available method of contravening the facts set forth in the supporting affidavits or declarations of the moving party is through cross-examination of such affiants or declarants or the testimony of third parties from whom affidavits or declarations cannot be secured, then such a showing may be deemed sufficient to establish that the facts set forth in such supporting affidavits or declarations are genuinely disputed.

[*12] In his response to respondent's motion for summary judgment, petitioner asserts that the administrative file is incomplete but that he has no means to acquire further documents and he is unable to force the governmental issuer or the conduit borrower of the bonds to execute an affidavit or declaration or produce records.

In Whistleblower 14106-10W v. Commissioner, 137 T.C. 183, 188-189 (2011), we stated:

> Rule 121(e) is modeled in large part after former rule 56(f) of the Federal Rules of Civil Procedure (redesignated rule 56(d) in 2009 with nonsubstantive changes). In Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386 (Fed. Cir. 1989), applying former rule 56(f), the court held that the plaintiff could not avoid summary judgment by requesting discovery. The court characterized the plaintiff's opposition as saying, in effect: "we have no factual basis for opposing summary judgment, but, if you stay proceedings, we might find something." Id. at 1389. The court observed: "If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files." Id. * * *

To conclude, we hold that there is no genuine issue as to any material fact and we may render a decision as a matter of law. As previously discussed, the IRS opened an examination of the bond issuances but ultimately concluded that they were valid and issued a no-change letter. Respondent, via sworn affidavit, states that no proceeds were collected and petitioner presented no evidence that any such

**[\*13]** proceeds were collected in this matter.  Consequently, we will grant

respondent's motion for summary judgment, filed April 16, 2018.

In the light of the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.