Virginia FLEMMINGS, Appellee,

v.

HOWARD UNIVERSITY, Appellant.

No. 99–7046.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 20, 1999.

Decided Dec. 14, 1999.

Squire Padgett argued the cause and filed the briefs for appellant.

Jonathan G. Axelrod argued the cause and filed the brief for appellee.

Before: SENTELLE, HENDERSON and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellee Virginia Flemmings filed suit against Howard University, her former employer, for violating the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"). Flemmings suffers from vertigo and Meniere's disease, which in 1996 and 1997 first substantially limited her ability to drive, then precluded her from working at all. Although Flemmings was on medical leave for most of the period in question, she claims that Howard failed to reasonably accommodate her disability by refusing her request for a revised schedule so that she could car pool with her husband and son. Howard counters that, for the time period at issue, Flemmings was not an otherwise qualified individual with a disability as defined by the ADA, and that even if she was, Howard did not fail to offer her a reasonable accommodation.

The district court granted summary judgment for Flemmings and against Howard, finding that Flemmings was a qualified individual as defined by the ADA and that the revised schedule would not have presented an undue hardship for Howard. Howard appeals that judgment. Because we find that there was no date for which Flemmings has offered evidence substantiating both an accommodatable disability and a denial of accommodation, we vacate the district court's grant of summary judgment for Flemmings, and order the district court to issue an order granting summary judgment for Howard.

I

Appellee was an administrative assistant to Dr. Janette Dates, Dean of Howard's School of Communications. Her responsibilities included making and screening phone calls, writing and typing letters, handling the mail, filing, keeping the Dean's appointment book, attending staff meetings, and so forth. The Dean considered Flemmings a good employee, although their relationship was strained after an incident in September, 1996, when a visitor to the office accused Flemmings of rude behavior.

In early November, 1996, Flemmings orally informed the Dean that she was suffering from vertigo, that the condition left her unable to drive to work, and that she needed to change her schedule—from 9:00 a.m. to 5:30 p.m., with a one-hour lunch break, to 8:30 a.m. to 4:00 p.m., without a lunch break—so that she could car pool with her son and husband. In a memorandum dated December 1, 1996, Flemmings reiterated in writing her need for this revised schedule, and indicated that the accommodation would be temporary. The Dean permitted Flemmings to work the revised schedule through November and December, although sometimes she gave appellee assignments at or near 4:00 p.m. which required her to work late.

On January 7, 1997, the Dean initiated a meeting with appellee and Donald Rainey, Howard's Director of Employee and Labor Relations, to discuss appellee's revised work schedule. Rainey claims to have told appellee that she could not unilaterally change her hours and that Howard was not obligated to accommodate her without medical documentation substantiating her need to leave work at 4:00 p.m. Appellee maintains that Rainey told her only that she had to work a regular 8:30 a.m. to 5:00 p.m. schedule, and that Howard did not request medical documentation at that time. Regardless, the day after the meet-

ing with the Dean and Rainey, appellee provided Rainey with a letter from Dr. Richard Lewis dated December 20, 1996. In the letter, Dr. Lewis described appellee as experiencing headaches, vertigo, and a sense of imbalance; diagnosed her as suffering potentially from Meniere's syndrome; and suggested a course of treatment including medication, dietary changes, and physical therapy. The letter did not discuss any limitations on appellee's ability to work or her need, if any, for an accommodation from Howard.

Friday, January 17, 1997, was the last day that Flemmings physically worked at Howard. She took vacation leave from January 20 through February 3, 1997. On January 27, 1997, she forwarded to the Dean a letter from Dr. Jerelle Copeland diagnosing her with vertigo and migraine headaches exacerbated by work related stress and recommending a ninety-day leave of absence. Howard granted appellee's request for medical leave. In April, 1997, Flemmings forwarded letters from Drs. Lewis and Copeland documenting her continued illness and recommending further medical leave through August, 1997. Again, Howard granted appellee's request. Throughout this period, until August 16, 1997, Howard continued to pay Flemmings her full salary, deducting from her available sick leave until it was exhausted.

On May 30, 1997, the Dean sent Flemmings a letter requesting further documentation of her disability and suggestions for a reasonable accommodation. On June 9, 1997, Flemmings provided Howard with another letter from Dr. Copeland indicating that Flemmings was "not medically stable to return to work," and that Dr. Copeland could not determine how long she would be so disabled. Flemmings concedes that, as of June 9, her health had deteriorated to such a degree that she was completely unable to work even with an accommodation.

Despite appellee's inability to work, in a letter dated July 8, 1997, her attorney requested the modified 8:30 a.m. to 4:00 p.m. schedule or disability retirement. On July 24, 1997, appellee sent a memorandum to Dates requesting advance sick leave through August 31, 1997. In a letter dated August 11, 1997, Howard offered Flemmings a schedule of 8:30 a.m. to 5:00 p.m. and indicated that this schedule was the only accommodation Howard would provide. On September 29, 1997, Howard's attorney wrote a letter to Flemmings reiterating the previous offers of retirement or the 8:30 a.m. to 5:00 p.m. schedule, but stating that her employment had been terminated because she had not returned to work. In a subsequent letter dated October 15, 1997, the Dean also informed Flemmings that her employment had been terminated effective September 29, 1997. In the only claim relevant to this appeal, Flemmings sued Howard University under the ADA for failing to reasonably accommodate her disability—Meniere's disease and vertigo.

On cross motions for summary judgment, the district court granted summary judgment in favor of the plaintiff. The court found that Flemmings was a qualified individual: Her job was not highly specialized, her job description did not require a rigid 8:30 a.m. to 5:00 p.m. schedule, and she could perform the essential functions of her job as an administrative assistant with a modified work schedule. The court then found that providing Flemmings with an 8:30 a.m. to 4:00 p.m. work schedule would not have presented an undue hardship for Howard: Granting Flemmings' request would not have required additional financial resources or impacted the overall operation of the Dean's office, and the Dean could have assigned late day work to another of her administrative assistants.

In a second order, the district court recognized appellee's claim that she would have worked from January 27 through June 9, 1997, if Howard had given her the requested revised work schedule, and that she would have taken sick leave from June 9 through October 15, 1997. On that basis,

the court entered judgment for the plaintiff in the amount of $16,524.73, representing the aggregation of the salary Flemmings would have earned had she worked from January 27 through June 9, offset by the amount Howard actually paid her from January 27 through August 16, plus pre-judgment and post-judgment interest. The court also ordered Howard to reinstate Flemmings so that she might retire and to take the necessary steps to provide Flemmings with retirement benefits due her. Howard appeals the district court's judgment.

## II

An appellate court reviews a grant of summary judgment de novo, applying the same standard as governed the district court's decision. *See, e.g., Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a genuine issue of material fact, the court must view all evidence presented by the nonmovant as presumptively valid and draw all reasonable inferences in its favor. *See, e.g., Smith–Haynie v. District of Columbia,* 155 F.3d 575, 579 (D.C.Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

## III

The ADA does not cover every individual with an impairment who suffers an adverse employment action. *See, e.g., Sutton v. United Air Lines, Inc.,* —— U.S. ——, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Instead, the ADA more specifically prohibits discrimination by an employer "against a qualified individual with a disability because of" that disability. 42

U.S.C. § 12112(a). The ADA explicitly defines "discrimination" as

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(b)(5)(A). Most pertinent for this case, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of" an individual, 42 U.S.C. § 12102(2)(A); and "reasonable accommodation" as including "job restructuring, part-time or modified work schedules, reassignment to a vacant position, ... and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). Far from protecting all impaired individuals from any sort of adverse employment action, the ADA protects a much more narrowly defined class of persons from particular types of discriminatory acts by employers. Endeavoring to fit her circumstances with the various statutory requirements, appellee maintains that she was disabled because she could not drive, and that by refusing to give her a revised work schedule so that she could car pool with her husband and son, Howard denied her a reasonable accommodation which would have allowed her to continue working. Howard's position is that, for the time period at issue, appellee was not an otherwise qualified individual with a disability as defined by the ADA, and that even if she was, Howard did not fail to offer her a reasonable accommodation.

Just last year, in *Aka v. Washington Hospital Center,* 156 F.3d 1284 (D.C.Cir. 1998) (*en banc*), this court addressed the protocol for evaluating reasonable accommodation claims under the ADA. In that case, we held that a reasonable accommodation claim is not subject to the familiar three-part analysis of *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), "but has its own specialized legal standards." *Aka,* 156 F.3d at 1288 (citing *Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993)). *Aka* adopted for ADA claims *Barth*'s thorough analysis of the applicability of *McDonnell Douglas* to such claims in the Rehabilitation Act context. *See Aka,* 156 F.3d at 1288, 1300–03; *Barth,* 2 F.3d at 1185–87. *Barth,* in turn, recognized three types of handicap discrimination claims, with special standards of evaluation for each: (1) where the employer claims non-discriminatory reasons for its adverse employment action; (2) where the employer maintains that the employee is not an otherwise qualified individual with a disability, or that no reasonable accommodation is available, so that the plaintiff falls outside the scope of ADA protection; and (3) where the employer offers the affirmative undue hardship defense for its actions. *See Barth,* 2 F.3d at 1186.

 The present case resembles both the second and third *Barth* scenarios, in that Howard challenges appellee's claim that she is protected by the ADA as a qualified individual with a disability, and maintains that the revised schedule she requested would have imposed an undue hardship. Applying traditional burden of proof standards to the ADA's statutory elements, as advocated by *Aka* and *Barth* for such cases, appellee carries the burden of proving by a preponderance of the evidence that she has a disability, but with a reasonable accommodation (which she must describe), she can perform the essential functions of her job. *See Aka,* 156 F.3d at 1300–01; *Barth,* 2 F.3d at 1186. Since Howard has invoked the affirmative defense of undue hardship, Howard bears the burden of establishing hardship based on several factors, including the nature and cost of the proposed accommodation, and the resources and circumstances of the employer in question. *See* 42 U.S.C. § 12111(10)(B) (listing the relevant factors to be considered in evaluating undue hardship). Thus, for appellee to prevail, she

must prove her case, and Howard must fail in its defense.

Appellee's case relies on a combination of two arguments of law which give us pause. First, she claims that she was disabled because vertigo and Meniere's disease prevented her from driving, which she suggests is a major life activity. Second, she contends that an employer's ADA accommodation obligation extends to helping a qualified disabled employee get to work in the first place. Driving was not one of her job duties. Indeed, she does not dispute, and in fact adamantly maintains, that she was fully capable of performing the duties of her job once she got to work, despite her condition. Instead, she only requested the revised schedule so that she could car pool with her son and husband at times convenient to them, rather than find some other means of getting to work or prevail upon her family to make the change in commuting schedule necessary to accommodate her.

 While appellee's reading of the ADA is questionable, we need not resolve these issues her case has raised, as her claim lacks an even more fundamental element. An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied. *See Mole v. Buckhorn Rubber Products, Inc.,* 165 F.3d 1212, 1217–18 (8th Cir.1999); *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 164–65 (5th Cir.1996). In the case before us, the parties have agreed that the relevant time period is January 27 through June 9, 1997; that is beginning with the date Flemmings provided Howard with Dr. Copeland's letter, which she claims substantiated her need for an accommodation, and ending with the date at which Flemmings concedes that she was wholly unable to work either with or without an accommodation, and thus fell beyond the scope of the ADA's protection. During that period of time, the only accommodation Flemmings requested was a medical

leave of absence, which accommodation Howard readily granted. Flemmings maintains that she only requested medical leave because Howard denied her a revised work schedule, but nothing in the record supports that allegation. The January 27 letter from Dr. Copeland, as well as the April letters from Drs. Copeland and Lewis, are explicit in recommending a medical leave of absence so that Flemmings could pursue treatment for her condition, and say nothing about a revised work schedule. Flemmings' requests for a revised work schedule were made prior to January 27, when she had not substantiated her need for any accommodation, and after June 9, when she concedes she could not have worked anyway. Thus, even reading all submitted evidence in the light most favorable for Flemmings, no reasonable jury could find that Howard denied her a reasonable accommodation after she provided documentation substantiating her need for one.

### Conclusion

The decision of the district court is reversed, and the case remanded for the entry of summary judgment in favor of Howard.