# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 19, 2015          Decided December 29, 2015

No. 14-7118

PENELOPE MINTER,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00516)

*Emre N. Ilter* argued the cause for appellant. On the brief were *Michael S. Nadel* and *Johnny H. Walker*.

*Richard S. Love*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:   Appellant Penelope Minter sued the District of Columbia for alleged violations of the Americans with Disabilities Act (ADA) and the Rehabilitation Act.  The district court granted summary judgment in favor of the District. We affirm.

I

Minter suffered from sarcoidosis and related sarcoid arthritis that made it difficult for her to maintain a regular forty-hours-per-week work schedule.  At a meeting in September 2006, she asked her employer, the District of Columbia Office of the Chief Medical Examiner (OCME), about working a reduced schedule as a way of accommodating her disability. Unfortunately, while the Office's ADA Coordinator was looking into the possibility of an accommodation, Minter slipped on a newly waxed floor and sustained a serious injury that severely aggravated her preexisting conditions.  The new injury occurred on September 26.  On December 1, Minter had a second meeting with the ADA Coordinator, Sharlene Williams, during which Minter contends that Williams said a reduced schedule would not be a reasonable accommodation, but also requested Minter's medical records "so that she could decide."  Minter Dep. 255-56 (Nov. 13, 2012) (J.A. 56).

Thereafter, in December and January, Minter took several weeks off from work on account of her September injury.  In February 2007, she stopped working altogether.  Between February and May, OCME sent Minter several letters requesting documentation of her injury; Minter did not provide any.  In June, OCME told her that she would have to report to duty or provide medical documentation of her injury.  If she did neither,

OCME said, it would have to find her absent without leave and subject to disciplinary action.

Minter finally responded by faxing her employer a physician's "Disability Certificate," dated June 19, 2007, stating that Minter's injury had left her "Totally Disabled" since September 26, 2006 and that she would be so disabled "indefinitely." Disability Certificate (J.A. 284).[1] Minter advised OCME that she "hope[d]" to return to work by September 2007. James Dep. 103 (J.A. 224) (testimony of Minter's supervisor quoting cover letter attached to the faxed disability certificate). Unwilling to wait any longer for Minter's uncertain return, OCME terminated her employment.

Minter brought suit under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, alleging that the District: (1) unlawfully refused to accommodate her disability, and (2) retaliated against her for requesting an accommodation by terminating her employment.[2] The district court granted summary judgment for the District on the grounds, inter alia, that no reasonable jury could find either that Minter was a qualified individual for purposes of the ADA and the Rehabilitation Act, or that Minter

---

[1] The disability certificate was contained in a sealed appendix. Because unsealing is required to explain our decision, we unseal the cited page. The substance of the certificate is already in the public record. *See Minter v. District of Columbia*, 62 F. Supp. 3d 149, 159 n.9 (D.D.C. 2014); Minter Br. 20-21; District Br. 13, 29.

[2] Minter's complaint also cited the District of Columbia Human Rights Act (DCHRA), D.C. Code §§ 2-1401.01 *et seq.* Neither she nor the district court treated that statute as requiring an analysis different from that required by the above-cited federal statutes, nor does she so contend on appeal. We therefore do not separately address her DCHRA claim.

was terminated because of her accommodation request. *Minter v. District of Columbia*, 62 F. Supp. 3d 149, 167-68 (D.D.C. 2014).[3]

We review the district court's grant of summary judgment de novo and "must view the evidence in the light most favorable to the nonmoving party." *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson*, 477 U.S. at 247-48. A dispute about a material fact is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

II

We first address Minter's claim that the District of Columbia unlawfully refused to accommodate her disability. The ADA and the Rehabilitation Act require the District to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (ADA provision); 29 U.S.C. § 794(d) (Rehabilitation Act provision incorporating ADA standards); *see Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014); *Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307

---

[3] The district court also found that Minter's failure-to-accommodate claims were untimely filed. *Minter*, 62 F. Supp. 3d at 161-65. Because the other grounds for granting summary judgment are sufficient, we do not reach the timeliness issues.

(D.C. Cir. 2010).[4]  Accordingly, to win on this claim, Minter must show both that the District refused to accommodate her disability, and that she was a "qualified individual," 42 U.S.C. § 12112(b)(5)(A).  *See Solomon*, 763 F.3d at 9.

Minter alleges that the District first denied her request for an accommodation on December 1, 2006, during a meeting with ADA Coordinator Williams.  Minter Br. 9-10.  She has not, however, raised a genuine dispute that her request was denied on that day.

Minter's own description of the December 1 conversation acknowledges that Williams requested more information about her injury, which indicates that Williams was trying to obtain information she needed to decide what to do -- not that she had already made a decision.  Thereafter, Williams sent Minter a string of e-mails, urging her to keep her appointment for a follow-up meeting on December 5 and telling Minter that Williams needed more information about "what accommodations are needed."  E-mail Chain Between Sharlene Williams and Penelope Minter (Dec. 1-5, 2006) (J.A. 235-36).  It is undisputed that Minter failed to keep her appointment; failed to provide any further information until her June physician's letter; and did not "raise[] her need for accommodation between December 2006 and June 2007."  Minter Reply Br. 12-13.

Thus, far from finally denying Minter's request for an accommodation, the record shows that Williams was engaged in the "interactive process" that is often necessary to determine a reasonable accommodation.  *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1167-68, 1167 n.4 (D.C. Cir. 2010) (quoting 29

---

[4] *See also* 29 U.S.C. §§ 705(34), 794(a) & (b)(1)(A) (application to the District of Columbia).

C.F.R. § 1630.2(o)(3)); *see also Ward v. McDonald*, 762 F.3d 24, 31-33, 33 n.3 (D.C. Cir. 2014); *Stewart*, 589 F.3d at 1308-09. To "establish that her request was 'denied,' [a plaintiff] must show either that the [agency] in fact ended the interactive process or that it participated in the process in bad faith." *Ward*, 762 F.3d at 32. Minter has failed to proffer any evidence that would raise a genuine dispute as to that question. *See id*. at 33 n.3 (affirming summary judgment, despite the plaintiff's testimony that her request for an accommodation was denied at a meeting, because a follow-up letter from the employer showed that "her accommodation request was still under consideration").

Minter alleges that the District denied her request for an accommodation a second time during a June 1, 2007, telephone call about her extended absence. The problem with a claim based on a June 1 denial is that Minter was indisputably not a a "qualified individual" as of that date.

As is relevant here, the term "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8); *see Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015). The plaintiff must establish her ability to perform those functions (with or without reasonable accommodation) at the time the employer denied her request for accommodation. *See Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (holding that a plaintiff's "ability to come to work, or to otherwise perform the essential functions of her job, is examined as of the time of

the adverse employment decision at issue").[5]  This Minter did not do.

It is undisputed that as of June 1, 2007, Minter had not performed a single day of work in more than three months. The only other evidence in the record regarding her ability to perform her employment functions on that date was her physician's certificate of June 19, 2007, which stated that she was and had been "Totally Disabled" since her injury on September 26, 2006.  The June certificate further stated that she was disabled "indefinitely."  And the most that Minter herself could say later that month was that she "hope[d]" to return in another three months.

Accordingly, there can be no genuine dispute that Minter was not a qualified individual on June 1.  *See* 42 U.S.C. § 12111(8) (defining "qualified individual" as one who can, with or without reasonable accommodation, "perform the essential functions" of her position); *see also* EEOC, No. 915.002, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act* (2002), *available at* 2002 WL 31994335, at *21 (stating that "six months is beyond a 'reasonable amount of time'" to retain a non-performing employee).  And because she was not a

---

[5] *See also Flemmings v. Howard Univ*., 198 F.3d 857, 858, 861-62 (D.C. Cir. 1999) (holding that a date at which the plaintiff was "wholly unable to work either with or without an accommodation . . . fell beyond the scope of the ADA's protection"); 29 C.F.R. § 1630.2(m) app. (EEOC Interp. Guidance) ("The determination of whether an individual with a disability is qualified . . . should be based on the capabilities of the individual . . . at the time of the employment decision."); Oral Arg. Recording at 25:00-10 (statement by Minter's counsel agreeing with this proposition).

"qualified individual," the district court properly granted summary judgment against her refusal-to-accommodate claim.

## III

Minter's second claim is that, by terminating her, the District unlawfully retaliated against her for seeking an accommodation for her disability. Such retaliation, if it had occurred, would have been prohibited by the ADA and the Rehabilitation Act. *See* 29 U.S.C. § 794(d); 42 U.S.C. § 12203(b); *see also Doak*, 798 F.3d at 1099; *Solomon*, 763 F.3d at 5, 14-16. To establish a retaliation claim, Minter must show, inter alia, that there "existed a causal link" between her termination and her request for an accommodation. *See Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005).

The District states that it terminated Minter, not because she requested an accommodation, but because she effectively abandoned her job. She did so, it maintains, by failing to report to work from February to June 2007 and failing to provide medical documentation supporting her absence -- notwithstanding repeated requests to do so during that period. *See* District Br. 38-39; *see also Minter*, 62 F. Supp. 3d at 168 (describing the District's position in the trial court). When she finally did provide a physician's certificate, it stated that she had been "Totally Disabled" since September and would be so "indefinitely." Disability Certificate (J.A. 284). Without elaboration or support, Minter's cover letter advised OCME that she "hope[d] to return by the beginning of September, depending on present treatment." James Dep. 103 (J.A. 224). Because "an essential function of any government job is an ability to appear for work," *Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994), the District's explanation for terminating Minter was legitimate, and no reasonable jury could conclude otherwise.

Where, as here, "an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action," the remaining question is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). Minter contends that she produced such evidence by showing that there was a conflict between the rationale for termination the District gave in this litigation and the rationale Beverly Fields, OCME's Chief of Staff, described in her deposition. That alleged conflict, Minter argues, indicates that the District's nonretaliatory reason was "'unworthy of credence.'" Minter Br. 30 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

To support her claim of conflicting rationales, Minter points to Fields' deposition, in which Fields testified that Minter was terminated because:

> We have to have work done. We're not getting any response from the employee for months, and the employee is not reporting to work. So, the agency has to have the work done and with all of the efforts that we made to attempt to get documentation from the employee, hear from the employee about what was going on with her, we had to make a decision to move forward so that we could get the work done.

Fields Dep. 94 (J.A. 283). Minter reads this testimony as saying that the District terminated her *solely* because she failed to provide the necessary documentation about her injury, while the District now claims that it terminated her for failing to provide adequate documentation *and* for failing to report to work. We

do not believe that a reasonable jury could perceive such a conflict. *See* Fields Dep. 94 (J.A. 283) (referring both to "the efforts that we made to attempt to get documentation from the employee" and to Minter "not reporting to work").[6]

Even if there were some inconsistency in the proffered rationales, Minter would still need to prove that the "actual reason" for her termination was retaliatory. *Adeyemi*, 525 F.3d at 1226. Nothing in the minor inconsistency that Minter alleges, however, supports such an inference. Instead, Minter relies on the "temporal proximity," *Solomon*, 763 F.3d at 16, between her second request for accommodation and her termination. But when an employer comes forward with a legitimate, nonretaliatory reason for an employment action, "positive evidence beyond mere proximity" is required "to create a genuine issue of material fact concerning whether the motive for [an adverse employment action] was . . . retaliation." *Id.*; *see Doak*, 798 F.3d at 1107-08; *Hamilton v. Geithner*, 666 F.3d 1344, 1359 (D.C. Cir. 2012). That is particularly true in a case like this one, in which the request for accommodation came during the same period in which the employee was entirely unable to perform the functions of her position even with an accommodation. Because Minter did not proffer any such evidence, the district court properly granted summary judgment against her retaliation claim.

---

[6] Although it is unclear, Minter's brief may also be read to argue that the District's reason for her firing was pretextual because Fields said OCME never received any medical documentation when, in fact, it received the disability certificate. Fields' testimony, however, was that something "may have" eventually come in from Minter's doctor, but that "it may not have been enough." Fields Dep. 93 (J.A. 282).

11

IV

For the foregoing reasons, the judgment of the district court is

*Affirmed.*