# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 20, 2019       Decided May 8, 2020

No. 18-7181

STEPHANIE WAGGEL,
APPELLANT

v.

GEORGE WASHINGTON UNIVERSITY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01412)

*Peter K. Tompa* argued the cause for appellant. With him on the briefs was *Jason H. Ehrenberg*.

*Nicholas S. McConnell* argued the cause for appellee. With him on the brief was *James N. Markels*.

Before: ROGERS, GARLAND and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Stephanie Waggel underwent treatment for cancer while working as a psychiatry resident at the George Washington University Hospital. Less than a year

later, the University terminated Waggel based on documented instances of unprofessionalism and deficient performance. Waggel alleges the University violated the Americans with Disabilities Act ("ADA") by failing to provide a reasonable accommodation and discriminating against her because of her cancer. Waggel further alleges the University retaliated against her and interfered with her rights under the Family and Medical Leave Act ("FMLA"). The district court granted summary judgment for the University on all claims. Because Waggel failed to request an accommodation under the ADA and failed to rebut the University's legitimate justifications for its actions, we affirm.

## I.

Stephanie Waggel joined the George Washington University Hospital for a four-year psychiatry residency program in July 2014. The residency program involves both clinical rotations under the supervision of attending physicians and academic coursework. To advance through each successive year, a resident must satisfy the program's minimum competency and training requirements. Residents receive intensive feedback from their supervising physicians channeled through the residency program's director, Dr. Lisa Catapano. From the beginning, Waggel's supervisors reported concerns about her allegedly unprofessional conduct, resistance to feedback, and lack of clinical knowledge.

In April 2015, Waggel was diagnosed with a renal cyst later confirmed to be stage one kidney cancer. Waggel suffered significant stress and anxiety from the diagnosis as well as physical discomfort related to the cyst. During this period, Waggel's supervising physicians reported a decline in her performance and in one instance sent Waggel home from a shift after determining she was unfit to deliver patient care. After

this incident, Waggel conferred with Dr. Catapano and a University administrator about medical leave. Although the University offered Waggel the option of seeking leave as an ADA accommodation, Waggel ultimately took ordinary vacation days to travel within the United States and abroad. In July 2015, Waggel underwent an inpatient surgery that successfully removed the cyst. Although the University granted two weeks of medical leave, Waggel found it extremely difficult to arrange time off for surgery notwithstanding the seriousness of her condition. Further, despite approval for two weeks of light duty upon returning to work, Waggel worked very long hours during this time, including shifts lasting more than twenty hours. For the remainder of her time in the program, Waggel needed to attend medical appointments for follow-up cancer screenings, treatment related to lingering physical symptoms, and therapy for ongoing anxiety related to her diagnosis. Waggel often struggled to secure time off and had to deal with supervisors who sometimes kept her late when she had appointments and told her to plan the appointments around the program's schedule.

In her second year in the residency program, Waggel's behavior at work prompted several complaints by supervising physicians to Dr. Catapano. In one incident, Waggel allegedly exhibited dangerous patterns of dealing with psychiatric patients by using methods of restraint contrary to University policy. In several others, Waggel allegedly missed shifts or failed to appropriately communicate patient status to other physicians. Dr. Catapano interceded to notify Waggel of these deficiencies and develop a plan to remedy shortfalls in training and performance. Waggel attributed the complaints in large part to her illness and believed the University was mistreating her because of her medical needs.

In October 2015, Waggel's relationship with Dr. Catapano and other program leaders deteriorated further when she encountered difficulties scheduling leave for a mandatory licensing exam. Although initially approved for a four-day administrative leave, the University revised Waggel's leave to two days for the stated purpose of maintaining uniform treatment with other residents. The program offered Waggel the option of taking additional personal leave, but also noted that further absences might cause her to work fewer than the minimum number of days required to complete the rotation. After an increasingly hostile email exchange with her supervisors, Waggel announced the following day that she would be taking two weeks of FMLA leave from program responsibilities.

In November 2015, Waggel was placed on forced administrative leave by Dr. Jeffrey Berger, the University's Associate Dean for Graduate Medical Education, pending investigation into allegations about Waggel's behavior. According to several police and community reports, Waggel appeared publicly intoxicated at an apartment complex near the hospital, engaged in loud and disruptive conduct, and used abusive language toward observers. The University initially viewed these reports as raising concerns about Waggel's mental health and suitability for patient care. After discussing the issue with Waggel, however, Dean Berger accepted Waggel's explanation that the incident arose from disputes with a neighbor rather than a substance abuse problem. Several weeks later, the University determined Waggel was ineligible for promotion to her third year in the program based on letters of deficiency she had accumulated over the previous year. In addition to describing instances of unprofessional conduct noted above, the letters indicated Waggel had failed two required courses and neglected to complete other administrative requirements.

Throughout Spring 2016, Waggel engaged in a series of discussions with Dr. Catapano and Dean Berger about remedying her performance, getting back on track to complete the program, and the possibility of transferring to a new residency program. According to the University, Waggel declined to follow up on offers to remedy identified deficiencies, threatened to bring legal action, and, in one instance, attempted to attend a class for which she lacked eligibility by misrepresenting her status to the instructor. According to Waggel, the University sought to burden her career by making it difficult to remedy her deficiencies, declining to provide specific feedback, and refusing to help her transfer to another residency program. Waggel took a second round of FMLA leave, this time as intermittent leave, to attend medical appointments in March.

In April 2016, a committee of supervising faculty voted unanimously to recommend dismissal, citing Waggel's letters of deficiency, a notice of unprofessional conduct related to her eligibility misrepresentation, and additional concerns about her suitability for patient care. This decision was adopted by Dr. Catapano, sustained on independent review, and affirmed on appeal by a senior University official.

After properly exhausting administrative remedies before the Equal Employment Opportunity Commission, Waggel filed suit against the University for failure to accommodate her disability and other disability discrimination under Title I of the ADA, 42 U.S.C. § 12111 *et seq.*, as well as for retaliating against and interfering with her exercise of rights under the FMLA, 29 U.S.C. § 2601 *et seq.*[1] The district court denied

---

[1] Waggel also pled her ADA claims under the District of Columbia Human Rights Act ("DCHRA"), D.C. CODE § 2–1401.01 *et seq.*, and

Waggel's motion for summary judgment on the ADA claims and granted summary judgment to the University on all claims. *Waggel v. George Washington Univ.*, No. 16-cv-1412, 2018 WL 5886653 (D.D.C. Nov. 9, 2018); *Waggel v. George Washington Univ.*, No. 16-cv-1412, 2018 WL 5893346 (D.D.C. Nov. 9, 2018).

This timely appeal followed. We review grants of summary judgment *de novo*, considering the evidence in the light most favorable to the non-prevailing party under the same standards as the district court. *See Stewart v. St. Elizabeths Hosp.*, 589 F.3d 1305, 1307 (D.C. Cir. 2010). In doing so, we do not "weigh the evidence and determine the truth of the matter" but instead "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

## II.

Title I of the Americans with Disabilities Act requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A), and makes it unlawful to "discriminate against a qualified individual on the basis of disability," *id.* § 12112(a). Waggel claims that the University failed to accommodate her disability,

---

her FMLA claims under the District of Columbia Family and Medical Leave Act ("DCFMLA"), *id.* § 32–501 *et seq.* Neither Waggel nor the district court noted material differences between the federal and District of Columbia statutes, and we therefore treat the analyses as identical for our purposes. *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (collapsing ADA and DCHRA inquiries); *Alford v. Providence Hosp.*, 561 F. App'x. 13, 14 (D.C. Cir. 2014) (unpublished judgment) (equating FMLA and DCFMLA inquiries).

namely renal cancer, and furthermore discriminated against her because of this disability. The University responds that Waggel never made a request for accommodation under the ADA and asserts legitimate, non-discriminatory reasons for each alleged adverse employment action.

A.

We turn first to Waggel's accommodation claim. To prevail on a reasonable accommodation claim, a plaintiff must establish by a preponderance of the evidence that "(1) she was a qualified individual with a disability, (2) the [employer] had notice of her disability and (3) the [employer] denied her request for a reasonable accommodation." *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014). We assume without deciding, as did the district court, that Waggel's renal cancer and the University's awareness of her diagnosis satisfy *Ward*'s first and second prongs. *See Waggel*, 2018 WL 5886653, at *3; *Waggel*, 2018 WL 5893346, at *6. Thus, Waggel's claim turns on the third prong, which requires her to demonstrate both that she requested a reasonable accommodation and that the request was denied by the University. *See Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied.").

Waggel concedes that she never expressly requested an ADA accommodation through the University's Office of Equal Employment Opportunity ("OEEO"). The OEEO processes ADA and FMLA requests confidentially and without interference from an employee's direct supervisors. Medical residents receive notice of the OEEO process in the resident manual, which details the ADA's protections and lists contact information for the OEEO. Further, after Waggel discussed

medical leave options with Dr. Catapano in May 2015, a leave administrator followed up by email to notify Waggel of FMLA eligibility requirements and to encourage her to contact the OEEO "[i]f you believe you are a qualified individual with a disability and would like to request a reasonable accommodation (such as medical leave) under the Americans with Disabilities Act." Email from Kimberly Vanlewen, Leave of Absence Program Administrator, to Dr. Stephanie Waggel (May 18, 2015). The email further stated that "ADA leave would provide similar job protections as FMLA so it is recommended that you apply." *Id.* Although Waggel visited the OEEO in September 2015, the record contains no evidence she sought assistance from OEEO staff pertaining to an ADA accommodation or submitted forms to initiate the University's accommodation process. Waggel inquired only about "policies to protect residents who needed time off for medical leave," and OEEO staff responded reasonably by providing information about FMLA leave. Decl. of Dr. Stephanie Waggel ¶ 98 (Feb. 1, 2018) ("Waggel Decl.").

Waggel argues her individual requests for time off to attend medical appointments amounted to a request for accommodation under the ADA notwithstanding her failure to ask for an accommodation. In *Flemmings*, however, we held that a request for a medical leave of absence standing alone was insufficient to make out a request for accommodation. *See* 198 F.3d at 861–62. Similarly, in *Chenari v. George Washington University*, we "doubt[ed]" that, notwithstanding the plaintiff's concession he never utilized the University's formal process for requesting ADA accommodation, his repeated notifications to the University of his ADHD made his "need for an accommodation … so apparent that the defendant must [have] offer[ed] one." 847 F.3d 740, 748 (D.C. Cir. 2017).

Relatedly, Waggel also claims that the "obvious problems" associated with her cancer diagnosis required the University to offer an accommodation in the absence of a valid request. Although we have assumed that the University had notice of her disability, Waggel argues that the problems arising from her disability—scheduling difficulties, serious anxiety, and perceived unprofessional conduct, for example— obligated the University to offer an accommodation. To be sure, in *Chenari* we recognized that "there may well be cases where the plaintiff's need for an accommodation is so apparent that the defendant must offer one regardless of whether the plaintiff requested it." *Id.* (citing *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269–70 (D.D.C. 2015)). But this is not such a case. Notice of a disability does not ordinarily satisfy the ADA's request requirement, which performs the independent function of informing an employer of the limitations imposed by a disability and the nature of the accommodation needed to remedy those limitations. *See, e.g.*, *Windham v. Harris Cty.*, 875 F.3d 229, 238 (5th Cir. 2017) ("[K]nowledge of a disability is different from knowledge of the resulting limitation. And it certainly is different from knowledge of the necessary accommodation."). Here, the connection between Waggel's disability and her performance difficulties was not obvious. As noted above, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings*, 198 F.3d at 861.

Finally, we reject Waggel's argument that her requests for FMLA leave should have been construed as requests for an ADA accommodation. Waggel cites no provision in the text of either statute that contemplates such an equivalency, and the structure of the statutes are fundamentally different. The FMLA guarantees leave to "eligible employee[s]" who have worked at their place of employment for a minimum length of

time. 29 U.S.C. §§ 2611(2), 2612(a)(1). Moreover, under the FMLA, a person may take leave to assist a family member. *See id.* § 2612(a)(1)(A)–(C), (E). By contrast, Title I of the ADA applies to "qualified individual[s]" with disabilities. 42 U.S.C. §§ 12111(8), 12112(a). The scope of entitlements under the ADA includes a range of reasonable accommodations while the FMLA authorizes only leave. *Compare id.* §§ 12111(9), 12112(b)(5)(A), *with* 29 U.S.C. § 2612(a)(1). The ADA, but not the FMLA, requires exhaustion of administrative remedies before filing suit. *See* 42 U.S.C. §§ 2000e-5(f)(1), 12117(a). Finally, the Department of Labor's implementing regulations emphasize claims under each statute must be analyzed separately while acknowledging accommodations may sometimes overlap. *See* 29 C.F.R. § 825.702(b) (noting the "ADA's 'disability' and FMLA's 'serious health condition' are different concepts, and must be analyzed separately"); *id.* § 825.702(c)(2) (comparing ADA and FMLA entitlements).[2]

Waggel chose to seek leave under the FMLA rather than request accommodation under the ADA. The ADA respects individual choices regarding whether and what type of accommodation to seek. *See* 42 U.S.C. § 12201(d) ("Nothing in this chapter shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit which such individual chooses not to accept."). Here, Waggel concedes she did not seek an ADA

---

[2] Waggel urges us to adopt the reasoning in *Capps v. Mondelez Global, LLC*, 847 F.3d 144 (3d Cir. 2017), which she argues equates FMLA and ADA requests. We read *Capps* more modestly as noting that a request can trigger both the FMLA and the ADA through language that independently satisfies the requirements of both statutes. *See id.* at 156–57 ("[A] request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." (citing 29 C.F.R. § 825.702(c)(2))).

accommodation through established channels, and under the circumstances this choice means no issues of material fact remain as to her reasonable accommodation claim.

B.

We turn next to Waggel's remaining ADA discrimination claims. "[T]he two basic elements of a disability discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's disability." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). When an employer asserts legitimate, nondiscriminatory reasons for an adverse employment action, we ask "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Id.* To prevail on her discrimination claim, Waggel must point to evidence tending to show the University's justifications for one or more adverse employment actions are pretextual.

The breadth and variety of discriminatory actions alleged in Waggel's complaint led the district court to analyze them categorically. *See Waggel*, 2018 WL 5886653, at *8–11; *Waggel*, 2018 WL 5893346, at *9–24. Waggel frames dozens of actions taken by the University during her two years in the program as circumstantial evidence of intentional discrimination through decisions on promotion, termination, job assignment, vacation time, training, and eligibility for transfer to another program. The University explains each decision by pointing to legitimate, non-discriminatory rationales embedded in documented reports from supervisors, letters of deficiency, and minutes from the meetings at which program leaders determined Waggel's status in the program.

Waggel fails to demonstrate the University took adverse employment actions against her "because of" her disability. *Adeyemi*, 525 F.3d at 1226. Take, for example, Waggel's claim that program leaders discriminated against her by reducing her administrative leave allotment for the October 2015 licensing exam. The University explains it reduced Waggel's leave to correct a clerical mistake: residents are allowed only two days of administrative leave for the exam, but administrators had mistakenly approved Waggel for four administrative days. Waggel points to no direct or circumstantial evidence rebutting the University's explanation and offers no reason to link the reduction in leave to her disability. The University here articulated a legitimate interest in following its policies and ensuring equal treatment of similarly situated employees.

Waggel was also unable to rebut the University's nondiscriminatory rationale for her termination. The faculty committee voted unanimously to dismiss Waggel based on many documented instances in which she fell short of the program's professional and academic requirements. This suffices as "a legitimate, nondiscriminatory reason" for the University's action. *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019). Moreover, the University also provided Waggel with an independent review and appeals process before terminating her employment. Although there was some disagreement within the University regarding the extent to which her cancer diagnosis should have been a mitigating factor in the University's decision, Waggel cites no evidence capable of rebutting the University's affirmative reasons justifying termination.

In addition, Waggel fails to identify sufficient evidence that Dean Berger used troubling police and community reports about her behavior as a pretext to place her on forced administrative leave in November 2015. Waggel's evidence of

pretext is the allegation that Dr. Catapano told her over the phone that the University disciplined her because she had taken "too much sick leave," a comment Waggel interpreted as relating to her disability. Waggel Decl. ¶ 136. The district court noted Dean Berger, not Dr. Catapano, was the decisionmaker regarding forced leave, and concluded Dr. Catapano's "stray comment" was insufficient to raise a genuine issue of material fact regarding pretext. *Waggel*, 2018 WL 5893346, at \*28–30 (evaluating comment as possible evidence for Waggel's FMLA retaliation claims). Our cases recognize that stray remarks by non-decisionmakers are not generally direct evidence of discrimination. *See Adeyemi*, 525 F.3d at 1229 (discounting comments made with respect to disabled employee by non-decisionmaker). However, the "actions of a discriminatory supervisor that feed into and causally influence the decisionmaker's ultimate determination" may establish a discrimination claim if sufficiently influential in the ultimate decision. *Steele v. Mattis*, 899 F.3d 943, 950 (D.C. Cir. 2018). Here, Dean Berger consulted Dr. Catapano before making his ultimate decision on forced administrative leave. *See* Decl. of Dr. Lisa Catapano ¶¶ 572–83 (Jan. 2, 2018). But the "too much sick leave" comment falls short of direct evidence of discrimination because it does not establish bias without the need for additional inference. *Cf. Steele*, 899 F.3d at 950–51. As indirect evidence, the "too much sick leave" comment does not establish bias sufficient to rebut the ample evidence that Dean Berger placed Waggel on administrative leave for nondiscriminatory reasons.

Waggel's submission "boils down to the proposition that discrimination plaintiffs should receive jury trials as a matter of course." *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1249 (D.C. Cir. 2011). "But that is not the way the law has developed." *Id.* The district court correctly awarded summary judgment to the University because Waggel failed to identify

evidence allowing a reasonable jury to conclude her employer discriminated against her because of her disability.

## III.

Waggel asserts retaliation and interference claims under the Family and Medical Leave Act, which guarantees leave to covered employees for, among other purposes, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Employers may not "interfere with, restrain, or deny the exercise" of FMLA rights, *id.* § 2615(a)(1), or "discriminate against any individual for opposing any practice made unlawful by this subchapter," *id.* § 2615(a)(2). As relevant here, a plaintiff may bring retaliation claims under § 2615(a)(1) by alleging an employer discriminated against her for taking FMLA leave. *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015) (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1367–68 (D.C. Cir. 2000)). And, of course, a plaintiff may bring interference claims under § 2615(a)(1) as well. *Id.* at 164 (citing *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010)).

## A.

Waggel alleges the University retaliated against her for taking medical leave in October 2015 and March 2016. Although her complaint did not specify which provision of 29 U.S.C. § 2615(a) was allegedly violated, we understand her allegations to arise under § 2615(a)(1) because her retaliation theories relate primarily to the University's reaction to her decisions to take FMLA leave rather than her opposition to the

University's leave policies.[3] We evaluate FMLA retaliation claims under the *McDonnell Douglas* framework. *See Gleklen*, 199 F.3d at 1367. To establish a *prima facie* case of FMLA retaliation, a plaintiff must show (1) the exercise of protected FMLA activity; (2) an adverse employment decision; and (3) a causal connection between the protected activity and the adverse action. *See id.* at 1368. Employers may rebut a *prima facie* case by putting forward evidence of a legitimate, non-retaliatory reason for the adverse action. *See id.* The plaintiff must identify evidence of pretext in order to overcome the employer's rebuttal and survive summary judgment. *See id.* (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc)).

Many of Waggel's retaliation allegations fail to satisfy one or more elements of the *prima facie* case. For example, Waggel alleges the University caused her to miss an appointment with her therapist in November 2015 by denying her additional time off. But the record notes only that she "could not leave work," Waggel Decl. ¶ 136, and Waggel alleges no specific adverse decision by the University or a causal connection between the action and her earlier FMLA leave. Further, Waggel alleges the University retaliated against her for appealing the faculty's decision that she repeat certain coursework. But this allegation,

---

[3] The district court interpreted Waggel's retaliation claims as arising under 29 U.S.C. § 2615(a)(2), which requires a plaintiff demonstrate she opposed an employer practice that violated the FMLA. *See Waggel*, 2018 WL 5893346 at *25. Because we interpret her claims as arising under § 2615(a)(1), we need not decide whether Waggel "oppos[ed] any practice" to determine whether the district court properly granted summary judgment on the retaliation claims. *See Gordon*, 778 F.3d at 162 ("[W]e need not resolve the adequacy of her claim under § 2615(a)(2) because [the plaintiff] also advances her retaliation claim under § 2615(a)(1), which contains no requirement that she 'oppose any practice.'").

too, fails to draw a causal connection between the alleged retaliatory actions and her exercise of FMLA rights.

Another set of Waggel's allegations plausibly state a *prima facie* case but fail to rebut the University's legitimate, nonretaliatory explanations. *See Gleklen*, 199 F.3d at 1368 (affirming summary judgment where plaintiff "fell far short of rebutting the [employer's] more plausible explanation for its actions"). For instance, Waggel claims the temporal proximity between her October 2015 FMLA leave and the University's decision to make her repeat certain coursework demonstrates the decision was retaliatory. As we have noted before, timing can help to establish the causal element of a *prima facie* case of retaliation. *See id.* ("Temporal proximity is often found sufficient to establish the requisite causal connection for such claims."). But the University explained its decision by pointing to Waggel's poor exam performance and distracting in-class behavior. While timing can establish a *prima facie* case of retaliation, dislodging an employer's nonretaliatory explanation as pretextual at the third step of *McDonnell Douglas* requires "positive evidence beyond mere proximity." *Minter v. District of Columbia*, 809 F.3d 66, 71–72 (D.C. Cir. 2015) (quoting *Solomon v. Vilsack*, 763 F.3d 1, 16 (D.C. Cir. 2014)).

On appeal, Waggel highlights one claim for which she points to more than proximity to rebut the University's explanation. Reframing her November 2015 forced administrative leave discrimination claim as an FMLA retaliation claim, Waggel argues Dr. Catapano's comment that she had "taken too much sick leave" rebuts the University's explanation as pretextual. Waggel Decl. ¶ 136. But as discussed above, this comment is not enough to overcome the University's justification and raise a genuine issue of material fact. Thus, the district court was correct to find the University

entitled to summary judgment on Waggel's FMLA retaliation claims.

## B.

Waggel also claims the University interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, a plaintiff must show (1) employer conduct that reasonably tends to interfere with, restrain, or deny the exercise of FMLA rights, and (2) prejudice arising from the interference. *See Gordon*, 778 F.3d at 164–65; *McFadden*, 611 F.3d at 7 (citing *Ragsdale v. Wolverine World Wide Inc.*, 535 U.S. 81, 89 (2002)).

Although Waggel raised several claims of interference below, *see Waggel*, 2018 WL 5893346, at *33–35, she presses only one on appeal: that the University discouraged her from retaining an attorney to represent her interests. In support of this allegation, Waggel cites an email from Dean Berger stating: "Please do not reference your attorney going forward, particularly to the people in your Department. It does not make for a safe working environment. It is your choice to continue to pursue this avenue." Email from Dr. Jeffrey Berger, Associate Dean for Graduate Medical Education, to Dr. Stephanie Waggel (Nov. 19, 2015). Further, Waggel points to a subsequent comment by Dean Berger during a meeting she secretly recorded that "he could not treat me the same way as others because I had legal representation." Waggel Decl. ¶ 212.

As an initial matter, Waggel cites no authority suggesting her retention of an attorney constituted protected FMLA activity under these circumstances. The FMLA protects an employee's rights to take guaranteed leave, oppose or complain about an employer practice made unlawful by the statute, and participate in "legal proceedings or inquiries relating to an

employee's rights." 29 C.F.R. § 825.220(a). To fall under the FMLA's protection, Waggel must show she retained her attorney to oppose or complain about unlawful activity, namely, the University's alleged retaliation for her FMLA leave in October 2015. But the record shows Dean Berger's email was responding to Waggel's statement that she had retained an attorney to pursue the goal of "graduat[ing] on time." Email from Dr. Stephanie Waggel to Dr. Lisa Catapano, Residency Training Program Director, and Dr. Jeffrey Berger, Associate Dean for Graduate Medical Education (Nov. 18, 2015). Further, the transcript of Waggel's recorded meeting with Dean Berger shows the two were discussing the University's internal procedures and support systems with no relation to FMLA leave or other protected activity. Tr. Interview between Dr. Jeffrey Berger, Associate Dean for Graduate Medical Education, and Dr. Stephanie Waggel 31–37 (Mar. 17, 2016).

Even if we were to assume her activity falls under the protection of the FMLA, a reasonable employee could not be discouraged from exercising FMLA rights by the innocuous comments at issue here. Drawing all inferences in Waggel's favor, Dean Berger's comments merely suggest something that is both plausible and lawful: Waggel's retention of an attorney prompted the University to become more cautious in communicating with her. Without more, an employer's statements mentioning the lawful consequences of initiating litigation and asking an employee to refrain from threats do not run afoul of the FMLA's prohibition on interference.

Finally, Waggel fails to identify evidence of prejudice arising "by reason of the violation" or "as a direct result of the violation." *Ragsdale*, 535 U.S. at 89 (quoting 29 U.S.C. § 2617(a)(1)(A)(i)(I)–(II)). Remedies for FMLA interference claims are "tailored to the harm suffered." *Id.* In *Gordon*, for

instance, we found a plaintiff adequately alleged prejudice in the form of documented monetary losses and harm to future career prospects. 778 F.3d at 166. In the absence of any similar allegations of prejudice arising specifically from Dean Berger's comments, Waggel's claim necessarily fails. The University was entitled to summary judgment on Waggel's interference claims.[4]

\* \* \*

For the foregoing reasons, the district court's grant of summary judgment in favor of the University is affirmed.

*So ordered*.

---

[4] Because the University's summary judgment motion failed to cite to the record as to Waggel's FMLA claims, the district court exercised its discretion to consider the motion based on the court's own review of the record under FED. R. CIV. P. 56(e)(3). *Waggel*, 2018 WL 5893346, at \*27. Waggel argues the district court abused its discretion by cherry picking evidence unfavorable to her case. We disagree. While Rule 56(c) provides that the court "need consider only the cited materials," Rule 56(e)(3) grants district courts discretion to go beyond facts cited by the moving party. There is no abuse of discretion so long as the movant successfully shifted the burden of production and the court views the evidence in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *cf. Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (emphasizing the district court's independent obligation to assure summary judgment is warranted based on undisputed material facts).